454 S.E.2d 393

**REALCORP, INC., Plaintiff
Below, Appellant,**

v.

**Shirley O. GILLESPIE, Defendant
Below, Appellee.**

**No. 21985.**

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 27, 1994.

Decided Dec. 15, 1994.

James F. Brown, IV, Charleston, for appellant.

Charles E. Hurt, Charleston, for appellee.

PER CURIAM:

This case is before the Court upon the appeal of Realcorp, Inc., from the March 2, 1993, final order of the Circuit Court of Kanawha County upholding the January 13, 1993, jury verdict wherein the Appellant, Realcorp, Inc., was awarded $1,000 on its complaint and the Appellee, Shirley O. Gillespie, was awarded $30,000 plus interest on her counterclaim. Finding no reversible error we affirm the judgment of the trial court.

## I.

The Appellant is a real estate brokerage firm in Charleston, West Virginia. The Appellee is a licensed real estate broker who became associated with the Appellant in October, 1988. At the time of their association, the parties established an oral agreement that the Appellee would be a commissioned salesperson entitled to a thirty percent listing commission and a thirty percent sales commission.

While associated with the Appellant, the Appellee obtained a listing for an apartment complex in the Huntington, West Virginia, area by the name of Westmoreland Estates. The Appellee was able to obtain an original contract for the sale of the apartment complex to Drs. Sam and Scott Henson for $2,000,000. Under that contract, the broker's commission was set at five percent of the gross selling price (or $100,000), to which the Appellee was entitled to sixty percent (or $60,000). The contract provided that the commission was payable by the owners of the complex ("Sellers") when the sale was consummated. This original contract of purchase and sale was subject to and contingent upon the Hensons obtaining a new loan for $1.6 million, which they were unable to do. After substantial modification of the financing terms, the sale of the property was consummated on February 8, 1989. The modified financing arrangement entered into in order for the closing to occur was set forth in a settlement statement and provided as follows: The Hensons substituted a newly formed corporation, named Medrecon Corporation ("Buyer"), as the Buyer. The corporation then assumed the existing first mortgage of $1,217,869.54. The Buyer received further owner financing of an additional $480,000, secured by a second deed of trust. The Sellers received cash in the amount of $194,233.30. The Buyer also received an additional $50,000 credit for a third deed of trust lien in favor of the Appellant. The consequence of this final term was that the real estate commission of 5 percent would be payable in two halves, $50,000 by check at closing and $50,000 by a note payable to the Appellant by Medrecon, which was due in two years and was secured by the third deed of trust against the property purchased.

Medrecon took title to the property and the Appellant paid the Appellee $30,000 from the $50,0000 commission the Appellant received at closing. Before the end of two years, Medrecon defaulted on the payment of the first and second deeds of trust. Medrecon conveyed the property back to the Sellers by deed in lieu of foreclosure. This extinguished the second deed of trust made by the Buyer to the Sellers to secure part of the purchase price, leaving only the original deed of trust that had been obtained by the Sellers when they originally purchased the property, and the $50,000 note held by the Appellant. At the Sellers' request, the Appellant released its deed of trust lien to allow this transaction to proceed.[1] Nothing more was paid to the Appellant other than the amount received at the closing.

On June 13, 1991, the Appellant filed a complaint against the Appellee to collect on a separate note for $5,500. In her amended answer and counterclaim, the Appellee alleged in count three of her counterclaim that she was owed a balance of $30,000 in commission from the Appellant as a result of the above-related transaction.[2] At the conclusion of a jury trial, the Appellant was awarded $1,000 on its complaint and the Appellee was awarded $30,000 plus interest on count three of her counterclaim. Appellant's motion for a directed verdict on count three of the Appellee's counterclaim was denied by the trial court. Appellant's motion for a judgment notwithstanding the verdict and

---

1. The deed of trust securing the remaining $50,-000 commission note provided that any default in senior notes and deeds of trust constituted a default of the commission note and deed of trust. John Cavendish, the President of Realcorp, testified he released the deed of trust lien since he deemed the note uncollectible as Medrecon had no other assets. The evidence also demonstrates that the Appellee was not consulted in any manner as to the release. Furthermore, the Appellee argues on appeal that Mr. Cavendish was a close personal friend of one of the sellers and the Appellee intimates the decision to release the lien was at least in part influenced by their friendship.

2. The Appellee alleged in count three of her counterclaim that:

On or about February 3, 1989, the defendant concluded the sale of property at a sales price of $2,000,000.00. As part of the closing of that transaction, a third deed of trust was taken by the plaintiff in the amount of $50,000.00 for a portion of the brokerage fee of which sum, $30,000 was the commission to which the defendant was entitled. Thereafter, without any right so to do, the plaintiff either collected the said note and failed to pay the defendant her commission or forgave the said note without paying the defendant her commission, to the defendant's damage of $30,000.00.

motion to set aside the verdict and be awarded a new trial were also denied.

It is from the final order entered March 2, 1993, that the Appellant appeals, raising the following grounds for relief:

1. The circuit court erred by denying the Appellant's motion for a new trial. As a basis for this assignment of error, the Appellant contends the trial court erred (a) in rejecting all of the instructions offered by the parties and submitting the case to the jury on a general charge alone and (b) in submitting the case to a jury when neither party had made a demand for a jury in their pleadings.

2. The circuit court erred in failing to grant the Appellant's motion for a directed verdict on the Appellee's counterclaim number three since the Appellee failed to present sufficient evidence to establish a valid claim for the $30,000 commission.

3. The circuit court erred by denying the Appellant's motion for a judgment notwithstanding the verdict or reducing the verdict since the verdict for the Appellee on her counterclaim was clearly not supported by the evidence and was unconscionable and excessive.

## II.

It was undisputed at trial that prior to the closing, there was a meeting between the Sellers, the Buyer, John Cavendish, Mike Thompson, and the Appellee. Mr. Cavendish was the President of Realcorp. Mr. Thompson was a broker with Realcorp and co-owner of Realcorp with Mr. Cavendish at the time of trial. Both of these individuals assisted in working out financial arrangements to enable this real estate transaction to occur. There were factual disputes, however, regarding whether or not the parties at that meeting discussed the modified terms subsequently included in the settlement statement with regard to postponement of the commission and whether the Appellee agreed to the modified terms of commission.

The Appellee testified that the first time she heard she was not going to get full commission on this sale was on the way to the closing when she was riding with John Cavendish. She further testified that she did not agree to this arrangement and had no input into it whatsoever. Mr. Cavendish testified to the contrary that the Appellee was at the meeting where modified financing was discussed and that the Appellee not only heard his proposition for the Appellant to take a note for half the commission, but agreed to it. He testified, additionally, that although standard language in the real estate contracts used by the Appellant provides that commission is due and payable in full on the date of closing, the conditions were altered in this case as a result of his "last ditch effort to salvage the deal."

At trial, the Appellant advanced the position that the sale in this case was not consummated under the terms of the original standard contract, but was ultimately consummated under terms of the settlement agreement which materially modified the financing terms. The Appellant argued that the Appellee agreed to the terms of the settlement agreement and that any commission due the Appellee was dependent upon the commission being actually received by the Appellant. The evidence was undisputed that the Appellee received sixty percent of the $50,000 commission Appellant actually realized on the transaction. Therefore, the Appellant argued, nothing more was owed to the Appellee.

The Appellee advanced the contrary position at trial that she did not agree to and was not bound by the modified terms of commission set forth in the settlement statement. She argued that under her employment agreement with the Appellant, she was entitled to a thirty percent listing commission and a thirty percent sales commission payable at the closing. The Appellee testified that the original contract of purchase and sale on this transaction was a standard real estate contract used by the Appellant which provided that the commission was due and payable upon consummation of the sale. She further testified that no one had discussed postponement of the commission with her until the date of the closing. The Appellee testified that she was not consulted about nor did she agree to the modified terms of com-

mission set forth in the settlement statement. She argued that it was solely the Appellant, without Appellee's input or approval, that agreed to those terms. The Appellee testified that Mr. Cavendish subsequently advised her that he had released the note and deed of trust upon the Buyer's default and that she was not consulted about, nor did she agree to, the relinquishment of the note. Mr. Cavendish testified that he did not recall consulting with the Appellee or seeking her agreement before he released the note. Consequently, the Appellee advanced at trial that she was entitled to receive a total of $60,000 commission on the real estate transaction which she listed and sold, $30,000 of which was still due to her. At the conclusion of the trial, the jury found for the Appellee on her counterclaim in the amount of "$30,000 [b]alance of commission plus todays going interest."

**3.** The trial court noted the parties' general objection to the refusal of their instructions, and the following dialogue then occurred:

THE COURT: It [the general objection] is on the record. Do you wish to make any specific objection on the record to my refusal of these instructions, either collectively or individually, Mr. Brown?
MR. BROWN: No specific objection.
THE COURT: Do you, Mr. Hurt—
MR. HURT: No, sir.

.    .    .    .    .

THE COURT: Now, I will give you some time to submit another instruction. . . .
THE COURT: Okay. I was looking at the instructions you had no objection to as offered by each of you. They really don't say anything that a general charge don't [sic] have in there anyway. They are worthless is what I am saying.
Do you want, either one of you, an instruction on your theory of the case?
MR. HURT: No, I would rather get it to the jury today. Otherwise, we might be here tomorrow.
THE COURT: Yeah, because it is going on 3:00 o'clock today right now.
MR. BROWN: Let's go ahead.
THE COURT: Pardon?
MR. BROWN: I am sorry, I didn't understand what you said.
THE COURT: Do you want a chance or opportunity to write an instruction that one can listen to and understand reflecting or stating your theory of the case, what the jury has to believe in order to find—actually, I don't think it takes a whole lot, more along the lines that if you find that she is indebted to your client pursuant to the terms and conditions of

### A.

Appellant assigns as error the trial court's failure to give its instructions to the jury regarding the issues of contract that were involved in this case. The trial judge found that the instructions offered by the Appellant and the Appellee on their theory of the case were confusing, wordy, appeared to be inappropriately binding, did not conform to the evidence and did not conform to the law. The court found other instructions offered by the parties were covered in the general charge. The parties' instructions were therefore refused. Even though asked by the court, neither party chose to make a specific objection to the refusal of any instruction; nor did they accept the offer by the court to have time to offer alternative instructions.[3] Of the instructions offered by the parties, only Appellant's instructions 5, 6 and 7[4] and Appellee's instructions 6, 7 and

a promissory note as described and viewed in the evidence, you may return a verdict in favor of Realcorp and against the defendant, Shirley Gillespie. That's about the long and short of it, isn't it?
MR. BROWN: Yes, sir.
MR. HURT: I think it could very easily be argued, so I think we ought to go ahead and get started.

**4.** Appellant's instructions 5, 6 and 7 were offered to address the issues raised in the Appellee's counterclaim number three. *See supra.* Instruction number 5 provided:

The Court instructs the jury that where a condition precedent is annexed to a contract upon which it is to take effect, the contract will not take effect until such condition is performed.
A contract is not made so long as in the contemplation of the parties something remains to be done to establish a contract relation. (citation omitted)

Appellant's Instruction Number 6 provided:
The Court instructs the jury that a written contract may be modified or its terms modified by a subsequent valid oral agreement, based upon valuable consideration. (citation omitted)

Appellant's Instruction Number 7 provided:
The Court instructs the jury that where an agent assumes to do a specified act, he has no right to compensation therefor, as a general rule, until the specified act has been substantially performed.
The whole service or duty must be performed before the right to any commission attaches, either ordinary or extraordinary: for

8 [5] deal with the issues that are now before this Court.

■ Upon examination, we agree with the trial court that the Appellant's instructions numbers 5, 6 and 7 were confusing, did not conform to the evidence, and were written too abstractly. The refusal of these instructions was therefore not error.

■ In syllabus point one of *Berkeley Homes, Inc., v. Radosh*, 172 W.Va. 683, 310 S.E.2d 201 (1983), we held:

'A court, though asked, is not bound to instruct a jury generally as to the law of the case. Instructions as to specific law points ought to be asked. A court may, without request, if it think[s] the interest of justice and a fair trial call for it, instruct the jury in matter of law, the instruction being sound in law and relevant to the evidence; but it is not bound to do so unless asked; but, if asked to give such proper specific instructions, it must do so.' Syl. Pt. 5, *State v. Cobbs*, 40 W.Va. 718, 22 S.E. 310 (1895), *overruled on other grounds*, 117 W.Va. 605, 186 S.E. 607 (1936).

172 W.Va. at 684, 310 S.E.2d at 201. We further held in syllabus point two of *Radosh* that:

If a party fails to offer an instruction regarding a particular point of law upon which he relies, he cannot later complain of the absence of such an instruction, there being no duty upon the court to so instruct the jury except where the error is so plain and the result so outrageous that the trial court must intervene to do substantial justice.

*Id.*

In *Radosh*, this Court noted that "the lawyers are responsible for trying law suits—it is the lawyers who must present a theory of the case, present the evidence necessary to prove that theory, and then offer appropriate instructions". *Id.* at 686, 310 S.E.2d at 203. It is troubling that this case was given to the jury without any guidance on the law applicable to the specific situation. Yet, we fail to see how the Appellant can now claim error in light of its failure to provide the trial court with instructions on its theory of the case which accurately conformed to the law and evidence as well as their unwillingness to state their objections with specificity to the refused instructions. This case appears not to have been well-tried, and the jury may have been left in the dark without any real instruction of law governing either side's theory of the case. But it is neither the job of the trial court nor certainly this Court to clean up after lawyers who refuse the opportunity to state with specificity their objections to the refusal of instructions, and refuse the opportunity to submit additional instructions for the trial court's consideration.

### B.

The Appellant also contends that the trial court erred in submitting the case to a jury when neither party made a jury demand in their pleadings.[6] Rule 39 of the West Virginia Rules of Civil Procedure provides in part:

(b) *By the court.*—Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, *the court* upon motion or request made not later than the placing of the action on the trial calendar shall, *or of its own initiative may*

---

an agent must complete the thing required of him before he is entitled to charge for it. But cases may occur in which an agent will be entitled to a remuneration for his or her service in proportion to what he or she has done, although he or she has not done the whole service or duty originally required. (citation omitted)

5. Appellee's instructions 6, 7 and 8 summarized the Appellee's position that the Appellant had a contractual obligation, that was not modified or altered, to pay her the full amount of the com-

---

mission to which she was entitled for the listing and the selling of the Westmoreland Estates property. Although Appellee's instructions 6, 7 and 8 were refused, the substance of the instructions was argued to the jury by the Appellee's counsel in closing argument. Based upon the evidence, the jury returned a verdict for the Appellee on her counterclaim.

6. Subsequent to the jury verdict, the Appellant moved for a new trial without a jury. This motion was denied by the trial court.

*at any time, order a trial by a jury of any or all such issues* (emphasis added).

(c) *Advisory jury and trial by consent.*—In all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury or, with the consent of the parties, may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right.

W.Va.R.Civ.P. 39(b), (c).

The Appellant acknowledges Rule 39 of the West Virginia Rules of Civil Procedure, but contends "nothing in this case establishes the [trial] court's action with respect to the status of this jury, whether it was a jury by right or merely advisory".[7] We fail to see exactly what argument the Appellant is advancing, or how there was any error in this case by the trial court's action in empaneling a jury to resolve the factual disputes presented by this case. The trial judge made a specific finding on the record that the jury verdict "was in accordance with the evidence and the issues of credibility" "and the law" and entered judgment according to the jury's findings.

### C.

The Appellant also contends that the circuit court erred in failing to grant the Appellant's motion for a directed verdict on the Appellee's counterclaim[8] and in denying Appellant's motion for judgement notwithstanding the verdict. This Court has previously addressed the standard for determining whether a jury verdict is supported by the evidence. In syllabus point five of *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert. denied*, 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984) we held:

> In determining whether there is sufficient evidence to support a jury verdict,

the Court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

173 W.Va. at 339, 315 S.E.2d at 597.

On the issue of a motion for judgment notwithstanding the verdict, we recently held that:

> In reviewing a trial court's ruling on a motion for a judgment notwithstanding the verdict, it is not the task of the appellate court reviewing facts to determine how it would have ruled on the evidence presented. Its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, in ruling on a motion for a judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the nonmoving party. If on review, the evidence is shown to be legally sufficient to sustain the verdict, it is the obligation of this Court to reverse the circuit court and to order judgment for the appellant.

Syl. Pt. 1, *Mildred L.M. v. John O.F.*, (No. 22037, filed Dec. 8, 1994).

In the instant case, there was sufficient evidence upon which the jury could have resolved the factual disputes in the underlying action in the manner which it did. Applying the standards of review set forth above, we find no error in the trial court's denial of the Appellant's motions for directed verdict and judgment notwithstanding the verdict.[9]

---

7. Brief of the Appellant at page 18.

8. *See* note 2.

9. The Appellant raised equitable estoppel as a defense in the pleadings below and argues on appeal that even if the Appellee did not agree to a modification of the commission, she is equitably estopped from making this claim. There may or may not be merit to this defense. However, counsel for the Appellant never crystallized this

as a legal issue for the court below by making an appropriate motion based on equitable estoppel. Appellant did make motions for a directed verdict and for judgment notwithstanding the verdict, but in support thereof, failed to articulate an argument based on equitable estoppel. He similarly did not even present a proposed instruction of law so that the jury could resolve any factual disputes which might exist in connection

Based upon the foregoing opinion, we hereby affirm the decision of the Circuit Court of Kanawha County.

Affirmed.

BROTHERTON, C.J., did not participate.

MILLER, Retired J., sitting by temporary assignment.

NEELY, J., dissents, and reserves the right to file a dissenting opinion.

NEELY, Justice, dissenting:

Anyone with an ounce of business experience understands that Realcorp, the appellant, is correct in this case. Here's what happened: Ms. Gillespie entered into a contract to sell a piece of property. If Ms. Gillespie had been able to sell the property for cash, she would have gotten five percent of the cash. But she couldn't sell the property for cash because there isn't much cash around. Ms. Gillespie's superior in the brokerage firm, however, managed to cut a deal by which everybody got a little bit of what he or she wanted; specifically, Ms. Gillespie ended up with thirty grand [1] (and that was cash). The deal having been cut, Ms. Gillespie was expected to wait until the third deed of trust was paid, and if everything had gone according to plan, Ms. Gillespie would have gotten another thirty grand. In business, we often bet on the come.

Well ... things didn't go according to plan and the deal turned sour. The sellers holding the second deed of trust agreed to take a deed in lieu of foreclosure, and it was only gentlemanly for the broker to give up the stone he held (to-wit, the third deed of trust) because no blood was about to be squeezed out of it. [2] So far, everybody behaved like a gentleman and acted as a reasonable business person. If Realcorp hadn't sued Ms. Gillespie, I would be very condemnatory and say Ms. Gillespie acted like a greedy pig and shame, shame on Ms. Gillespie. [3] However, Ms. Gillespie's action was a counterclaim and, notwithstanding the majority treatise on procedure, this case has actually been decided under the rule that "sometimes you get the bear and sometimes the bear gets you." But for that reason the case shouldn't be taken to stand for much and has no precedential value with regard to sales commissions.

with this issue. Thus, we find no merit to this contention.

Appellant also contends that the jury award of $30,000 was unconscionable and excessive since the Appellant had only received $20,000 from the sale and that it was error for the trial court to refuse to reduce the award. We find this assignment to be without merit based on the rulings set forth in this opinion.

1. And that ain't hay in West Virginia!

2. This is also sometimes known as "the dog in the manger rule."

3. I have always thought that resorting to procedural manipulation is the last recourse of the judicial scoundrel since even the dimmest judge bulb can manipulate procedural rules to arrive at any ridiculous result. But to play the procedural game, appellant's instructions 4 and 5 are sufficiently correct that they should have been given. But even better, the jury verdict was clearly contrary to the weight of the evidence, just for a moment to take seriously articulations of standards of review.