469 S.E.2d 636

Diana L. GROSS, Plaintiff
Below, Appellant,

v.

David R. GROSS, Defendant
Below, Appellee.

No. 22911.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 17, 1996.

Decided March 20, 1996.

Thomas W. Kupec, Michael & Kupec, Clarksburg, for Appellant.

Douglas A. Cornelius, Clarksburg, for Appellee.

PER CURIAM:

This is an appeal by Diana L. Gross from an order of the Circuit Court of Harrison County which directed the distribution of marital property in a divorce proceeding. In making the distribution, the circuit court essentially followed the recommendation of a family law master. On appeal, the appellant claims that the family law master did not make appropriate, independent findings of fact and conclusions of law and that he inappropriately submitted the findings and conclusions drafted by the appellee's attorney as his own recommendation. The appellant also contends that the distribution of marital property was contrary to the evidence presented and violated the statutes governing equitable distribution. Lastly, the appellant argues that the circuit court erred in refusing to award her attorney fees. After reviewing the questions presented and the record filed, this Court disagrees with the appellant's assertions. The judgment of the Circuit Court of Harrison County is, therefore, affirmed.

The appellant, Diana L. Gross, and the appellee, David R. Gross, were married on November 1, 1980, and during their marriage they accumulated substantial property, including a martial home, various automobiles, retirement accounts, life insurance, and business assets assembled in two corporations called Village Square Development, Inc., and Buck's, Inc.

In October, 1989, the appellant filed a divorce complaint against the appellee in which she requested a divorce, custody of the parties' infant children, possession of the parties' last marital home, equitable distribution, and

attorney fees. The proceedings in the case were bifurcated, and on March 29, 1993, an order was entered granting the parties a divorce on the ground of irreconcilable differences.

Thereafter, various proceedings on the distribution of the parties' property were conducted before the family law master. At the conclusion of those proceedings, the family law master requested that the attorney for the appellant and the attorney for the appellee prepare proposed orders setting forth recommended findings of fact and conclusions of law.

The attorneys prepared the proposed orders requested by the family law master, and after examining the orders, the family law master concluded that the appellee's recommended order contained appropriate findings of fact and conclusions of law and, without making any changes to it, submitted it to the circuit court with the recommendation that it be adopted.

The circuit court reviewed the family law master's recommendation, a petition for review filed by the appellant challenging the family law master's recommendation,[1] the appellee's answer in opposition to the appellant's petition for review, and the record in the case. On December 19, 1994, the circuit court entered the order from which the appellant now appeals. In that order, the circuit court stated:

[The] exceptions to the Family Law Master's order can be categorized and analyzed in three (3) broad categories: (1) the adoption of one (1) party's findings of fact and conclusions of law by the Family Law Master; (2) the issue of attorneys fees; and (3) the equitable distribution of the parties' assets.

The court proceeded:

With respect to the issue of whether or not the Family Law Master may direct counsel to submit proposed findings of fact and conclusions of law and thereafter adopt in its entirety one side or the other's proposed findings of fact and conclusions

of law must be answered in the affirmative. It would appear within the sound discretion of the Family Law Master to adopt, *in toto*, the findings and conclusions of one (1) of the parties, but only if the facts presented in the evidentiary hearings and the law applicable thereto would justify the Family Law Master doing so.

On the question of whether the distribution of the parties' assets was made in accordance with the law, the court stated:

With respect to the issue of equitable distribution, the Court has spent considerable time reviewing the various financial statements submitted by the plaintiff and the defendant in this matter in an effort to ascertain whether or not the Family Law Master's recommendation was violative of W.Va.Code 48A–4–20 or the common law of the State of West Virginia. After reviewing all of the exceptions of the plaintiff with respect to the equitable distribution, it appears clear that the Family Law Master heard conflicting testimony, some general, some very specific, concerning the assets and liabilities of the parties. The Family Law Master was then called upon to rule as to the extent of the parties' assets and liabilities and then make an equitable distribution thereof. It is well settled that in a divorce suit, the findings of fact of a trial chancellor, based upon conflicting evidence will not be disturbed on appeal unless it is clearly wrong or against the preponderance of the evidence.

Finally, on the issue of attorneys fees, the court said:

With respect to the issue of attorneys fees, a review of the record herein indicates that the parties were in fact divorced on the 29th day of March, 1993, and that the issues of equitable distribution of marital assets and liabilities and attorneys fees were reserved for further proceedings as a result of the bifurcation agreed to by the plaintiff and defendant.... It further appears from the record that the plaintiff [the appellant in the present proceeding] did not seek nor was she denied the ability

---

**1.** The Court has been unable to locate this "Petition for Review" in the printed record submitted in conjunction with this appeal, and, consequently, the Court is unable to state the exact nature of the appellant's assertions.

to introduce such evidence and as a result of the plaintiff not introducing evidence in connection with her request for the payment of attorney fees by the defendant, she has waived her right to do so since such a request was not made prior to the conclusion of the hearings before the Family Law Master.

The court proceeded to state that, after conducting the review referred to, the court could not say that the family law master's conclusions were violative of statutory or common law standards. The court, therefore, ruled that the family law master's order was just and proper in all respects, denied the appellant's petition for review, and, in effect, adopted the order recommended by the family law master.

In the present proceeding, the appellant's first assertion is that the family law master violated his duty to make findings of fact and conclusions of law, a duty established by W.Va.Code § 48A–4–13, when he simply adopted the recommended order submitted by the appellee's attorney and when he made no independent statements of his own conclusions.

■ The appellant is correct in stating that W.Va.Code § 48A–4–13 imposes a duty upon a family law master to make findings of fact and conclusions of law, and this Court has recognized that the duty to make such findings and conclusions is mandatory rather than directory. *State ex rel. Coats v. Means,* 188 W.Va. 233, 423 S.E.2d 636 (1992), and *Whiting v. Whiting,* 183 W.Va. 451, 396 S.E.2d 413 (1990).

The relevant portion of W.Va.Code § 48A–4–13 imposing the duty to make findings of fact and conclusion of law provides:

(b) A master who has presided at the hearing pursuant to section nine of this article shall recommend an order and findings of fact and conclusions of law to the circuit court within ten days following the close of the evidence. . . .

However, the statute goes on to provide:

Before the recommended order is made, the master may, in his discretion, require the parties to submit proposed findings and conclusions and the supporting reasons therefor.

In 9A C. Wright and A. Miller, *Federal Practice and Procedure,* § 2579 (1995), findings of fact, and inferentially conclusions of law, are discussed, and it is stated that:

[F]indings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue.

From the discussion in *Federal Practice and Procedure,* it is apparent that the purpose of the law in imposing the obligation on a trier to make findings of fact and conclusions of law is to insure that the trier, in reaching a decision, goes through a mental process whereby he relates the evidence adduced to the principles of law governing the issue in dispute. Further, the making of findings and conclusions enables a reviewing court to examine the trier's mental process to determine if the ultimate judgment is rationally and legally related to evidence adduced.

In this Court's opinion, the critical stage of fact finding and making conclusions of law is the mental activity of relating facts developed by evidence to the relevant law; it is not the mechanical reduction of findings and conclusions to paper. Consistent with this, our law, and W.Va.Code § 48A–4–13 in particular, has required a family law master make findings of fact and conclusions of law, but it has also provided that a family law master may enlist the aid of counsel for the parties to assist in the mental activity and may further enlist their aid in the mechanical process of reduction of analysis and conclusion to paper.

■ In *State ex rel. Dillon v. Egnor,* 188 W.Va. 221, 423 S.E.2d 624 (1992), this Court explicitly recognized that, given the statutory language defining a family law master's duties, a family law master, in a case where the parties are represented by an attorney, may require the attorneys to submit findings of fact and conclusions of law and may adopt the findings of fact and conclusions of law submitted by the attorneys. As stated in *State ex rel. Dillon v. Egnor:*

Obviously, the family law master may . . . require the attorneys for the parties to submit proposed findings of fact and conclusions of law, and may, in an appropriate case, adopt such proposed findings and conclusions.

188 W.Va. at 228, 423 S.E.2d at 631.[2]

Since it is obviously impossible for a reviewing court to enter a family law master's mind subjectively, the determination of whether the family law master actually, independently made findings of fact and conclusions of law, and thus appropriately used the assistance and recommendations of counsel, or whether he improperly surrendered his responsibilities to counsel, must ultimately be viewed objectively. If the findings of fact are objectively consistent with the evidence, and if the conclusions of law are appropriate, given the state of the law at the time, the Court must infer that the family law master complied with his duties, even if it outwardly appears that he simply adopted the findings and conclusions of an attorney for one of the parties.

An examination of the findings and conclusions submitted by the family law master in the present case and the record made displays, as will hereinafter be explained, and as the circuit court below specifically found, that the findings of the family law master were based on the evidence in the record and that those findings were related to the relevant law. In view of this, and in view of the language of W.Va.Code § 48A–4–13 and the holding in *State ex rel. Dillon v. Egnor*, *supra*, this Court cannot conclude that the family law master erred in adopting the appellee's attorney's findings of fact and conclusions of law or that the circuit court erred in accepting the family law master's recommendation.

In addition to claiming that the family law master erred in applying the findings and conclusions of the appellee's attorney, the appellant claims that those findings show that the family law master did not follow the appropriate steps in the equitable distribution process in analyzing the evidence presented during the proceedings on the distribution of the parties' property. She further claims that the distribution based on those findings and conclusions is not supported by the evidence.

■ In syllabus point 1 of *Whiting v. Whiting, supra*, the Court summarized the procedure to be followed in distributing property in a divorce proceeding. That syllabus point states:

Equitable distribution under W.Va.Code, 48–2–1, *et seq.*, is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in W.Va. Code, 48–2–32.

In this Court's opinion, the recommended order submitted by the family law master demonstrates that the procedure outlined in syllabus point 1 of *Whiting v. Whiting, Id.*, was followed. First, the parties' property was classified as marital or non-marital. Specifically, the order stated: "This action was filed on October 18, 1989, at which time the parties had the following marital assets and liabilities. . . ." A lengthy listing of assets then follows. This listing includes the marital home, household furnishings, a Jeep Wagoneer, two corporations, and a retirement account. Certain assets were also classified as separate property, including a portion of the appellee's life insurance and property acquired by the parties after the institution of the divorce. Secondly, the order does value the marital assets. It places

---

**2.** The Court proceeded to note in *Dillon* that there is a special rule in the case where the parties were not represented by attorney or were *pro se* litigants. The Court said:

In cases involving *pro se* litigants, the family law master has a duty, under W.Va.Code, 48A–4–1(m), and W.Va.Code, 48A–4–4(b), to prepare the recommended order.

188 W.Va. at 227, 423 S.E.2d at 630.

It should be obvious that the reason for distinguishing between represented and *pro se* litigants is that represented litigants are represented by attorneys who are specially trained and skilled in the analysis of facts and the relation of facts to law, whereas *pro se* litigants are not.

In the present case, the parties were clearly represented by attorneys, so the *pro se* exception to the general rule does not apply.

of value of $99,000.00 to $110,000.00 on the marital home; it places a value of $10,000.00 on the household furnishings and a value of $14,000.00 on the Jeep Wagoneer. The corporations are valued at a negative $232,-798.91 and a positive $49,673.00. The remaining assets are also valued. Lastly, the marital estate is divided between the parties. For instance, the appellant is awarded the household furnishings and the value of the Jeep Wagoneer. The appellee is awarded a retirement account and certain insurance *in toto*, even though they were marital property, with the note that the appellant's interests in them were offset by the appellee's interest in the household furnishings, etc. awarded to the appellant. The appellee is awarded the corporations (which had a net negative value), even though they were marital property, with the provision that he be solely liable for the liabilities related to the corporations. The order provides that the marital home remain jointly titled, but that the appellant shall have the exclusive possession of it, subject to certain conditions, and that the appellee make mortgage, tax, and insurance payments on it.[3] The order also allocates other property.

█ In examining the question of whether the distribution was in accordance with the evidence adduced in the case, the Court notes that in syllabus point 1 of *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995), this Court summarized the standard of review to be followed in assessing rulings of a circuit court and family law master on such questions in a divorce proceeding. The Court stated:

In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged

standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

Recently, the Court, in syllabus point 4 of *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (W.Va.1996), restated this as follows: "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*."

█ It appears that the appellant's principal claim in regard to the findings is that the circuit court and family law master failed to place appropriate values on various items of the parties' property. After examining the record, the Court cannot find reversible error in conjunction with the appellant's assertions on this point. For instance, the family law master placed a value of from $99,000.00 to $110,000.00 on the marital home. Regarding this point, the appellant's husband specifically testified that the marital home was worth $110,000.00, that it was bought during marriage, and that $49,000.00 was still owed on it. There was other evidence, the testimony of the appellant herself, suggesting that it was worth $99,000.00. Rather clearly, the $99,000.00 to $110,000.00 value was supported by the evidence, and the Court cannot determine that such a finding constituted reversible error, especially because the family law master ruled that it would continue to be jointly owned by the parties.[4] The family

---

3. It appears that the appellant and her attorney have fundamentally misunderstood the distribution order on the home. They argue: "In regard to the marital home there was no distribution of that asset...." As this Court reads the order, the appellant was awarded a one-half undivided interest in the home and the appellee was required to make mortgage and other payments on it. The appellant was also awarded exclusive possession of it, subject to certain conditions. The Court notes that the granting of exclusive use and occupancy of a marital home for a

limited period is authorized by W.Va.Code § 48-2–15, under certain circumstances.

4. Actually, the Court believes that the family law master should have placed an absolute value on the home, but since it was ordered that it continue to be jointly owned, it is clear that the appellant was granted one-half the value, whatever that may be, and if it is ever sold, she will be entitled to one-half the actual proceeds. Thus, the Court cannot conclude that the family law master's placing a "range value" on the asset constituted prejudicial error.

law master found that the household furnishings had a fair market value of $10,000.00. The appellant's husband testified that they were worth more, but if they were sold on the open market they would probably bring substantially less, but there was other evidence suggesting that they were worth $10,000.00.

■ A principal holding that the appellant challenges is the value placed by the family law master on the parties' businesses. Those businesses were conducted inside two corporations, Village Square Development, Inc., and Buck's, Inc. The appellant's husband testified that he acquired all the stock in Village Square Development, Inc., in July, 1980, prior to the time he was married in November, 1980. He, however, did concede that payments were made on either the stock or the assets in the course of the marriage. The evidence showed that the appellant did work in that business and apparently for Buck's, Inc., as well, for a time during marriage. On the basis of this evidence, the family law master found, and the circuit court affirmed, that the two corporations were marital assets. In the absence of clear evidence of the value of the businesses when they were acquired prior to the marriage and the precise contributions to their purchase made during the marriage from marital assets or earnings during the marriage, the ruling that the businesses were marital assets and therefore not the separate property of appellee, is consistent with the principle set forth in syllabus point 3 of *Whiting v. Whiting, supra,* that:

W.Va.Code, 48–2–1(e)(1) (1986), defining all property acquired during the marriage as marital property except for certain limited categories of property which are considered separate or nonmarital, expresses a marked preference for characterizing the property of the parties to a divorce action as marital property.

■ During the hearings in this case, the appellant testified as to her opinion as to the value of the real estate in Village Square Development, Inc. For instance, she testified:

Q At the time of the separation, did you have a belief of the fair market value of that property?

A Yes, I have what I feel it is worth. I mean the value of it.

Q What is that value?

A I would say the whole complex was $1,700,000.00. . . .

It appears that the real estate value figures advanced by the appellant were based on appraisals done in 1987 and 1990, at least one of which was made in conjunction with a loan application made by the appellee. Other evidence showed that a very substantial portion of the property had been placed on the market for $1,000,000.00 the year before the hearing in the case, and there were no takers at that price. While the real estate was an important aspect of the corporate values, the evidence adduced by the appellee showed there were huge corporate liabilities as well as other factors impacting on the overall values of the corporations. The appellant did not introduce expert testimony as to the overall value of the businesses and did not meaningfully develop evidence on their liabilities. The appellee, on the other hand, not only testified as to his opinion of the value of the businesses, but introduced lengthy and detailed testimony from Clayton Pender, a certified public accountant with thirty years' experience in the profession. Mr. Pender carefully went through the income, the assets, the liabilities, and the other facts relating to the value of the businesses. He concluded that, after taking into account very large notes, which at one point in the proceedings had balances of approximately $955,000.00 owed, and other obligations, the Village Square business did not have a positive value. He was pressed on this point, and the testimony proceeded as follows:

Q Also based upon your knowledge and expertise as an accountant, you have expressed an opinion that these corporations do not have a positive value, but rather have a negative, a deficit value?

A Yes.

Q Was that the situation, as best as you know it, when David [the appellee] first acquired these properties, back in July of 1980?

A  Yes.

Q  Since that time, to your knowledge, has there been any increase in the value of these properties?

A  Not that I can see.

Q  Based upon even the present time, even beyond the date of the action being filed in October '89 until the present time, in your opinion, do these corporations have any positive value?

A  No.

He further testified that, in his opinion, at around the time of the filing of the divorce action the Village Square business had a deficit of over $238,000.00. At another point Mr. Pender testified that Buck's, Inc., in September, 1989, at the time of the filing of the divorce action, had a value of total equity of $49,673.00.

In making findings of fact in this case, the family law master specifically found that Village Square Development, Inc., had a negative net value of $232,798.91 and that Buck's, Inc., had a net value of positive $49,673.00. He awarded the appellee the businesses in the allocation of assets and specifically provided that the appellee would be solely liable for the obligations connected to them.

Essentially, there was a conflict in the evidence on the values of the corporations, and the family law master resolved the conflict in favor of the appellee. While it is true that the values found by the family law master were inconsistent with the evidence introduced by the appellant, they were consistent with the evidence adduced by the appellee, which was more complete and more expert than that of the appellant. In resolving the conflicts in favor of the appellee under the circumstances, the Court cannot conclude that the family law master was clearly wrong or that the circuit court erred in ordering a distribution based on such findings.

◼ The appellant is also apparently taking issue with the allocation of the corporations to the appellee. It appears that during the proceeding in this case the appellant did not request an interest in the corporations, and in the order submitted by her attorney containing proposed findings of fact and conclusions of law, she recommended that the appellee have sole ownership of these assets. Additionally, W.Va.Code § 48–2–32(e) provides that in allocating business interests a court may give preference to a party who has the closest relationship with or who earns his livelihood from such business. The statute provides, in relevant part:

In the case of such business interests, the court shall give preference to the party having the closer involvement, larger ownership interest or greater dependency upon the business entity for income or other resources required to meet responsibilities imposed under this article....

In *Tallman v. Tallman,* 183 W.Va. 491, 396 S.E.2d 453 (1990), the Court recognized that a trial court may allocate such business interest to the party having the greater dependency on the business income.

It appears that the appellee in the present case was principally dependent upon Village Square, Inc., and Buck's, Inc., for his livelihood and that the did have substantial mortgage payments to make on the marital home as well as other payments pursuant to the divorce. Under the circumstances, and in view of the fact that the appellant herself recommended to the family law master that the appellee be awarded these assets, the Court believes that the allocation of the corporations to the appellee was appropriate.

◼ The appellant also argues that "the parties had numerous automobiles that should be considered marital property." Although the family law master did not separately allocate each vehicle which was connected with the parties, there was evidence that most of these vehicles were corporate property and allocated in the allocation of the corporations. Also, the family law master noted, consistent with the evidence adduced, that the parties had a marital vehicle, a premarital (separate property) vehicle, and post-separation vehicles and allocated them according to the law.

The Court also notes that the appellant claims:

The evidence also showed that the Defendant [appellee] invested over One Hundred and Forty Thousand Dollars ($140,-000.00) with other parties during the term

of the marriage in regard to investments and repairs to real property owned by other individuals other than the parties thereto.

There was evidence the appellee had assisted a very old friend and acquaintance, Jean Dean, in building a camp or home in Alabama. However, there was a conflict as to whose money went into this structure, and the appellant took the position that it really belonged to the appellee.[5] There was also evidence that the appellee had no interest whatsoever in this structure.[6] The family law master essentially resolved this conflict in favor of the appellee.

Somewhat similarly, the appellant claimed that a parcel of property called the "Hiassan" property in Salem, West Virginia, should be considered an asset held by the appellee. The appellee testified that he had leased this property, with an option to purchase it, after the parties were separated and the divorce complaint had been filed. Through his attorney, he asserted that it was thus separate property, and the family law master accepted that position.

Overall, the Court believes that the family law master's findings on the ownership and value of the parties' property were supported by the evidence, even though much of it was contradicted by conflicting testimony. Also, the Court believes that the conclusions of law were consistent with the law. Given the evidence, the Court cannot conclude that the findings were clearly erroneous or that the conclusions of law were contrary to the law.

▌ Lastly, the appellant claims that the issue of attorney fees is controlled by W.Va. Code § 48–2–13(a)(4) and that this section requires that the court address the question of attorney fees by examining the financial condition of the parties.

The evidentiary hearings conducted on March 14, April 15, and June 23, 1994, were specifically conducted on the issues of equitable distribution, attorney fees, and court costs, and at those hearings the appellant did not request that the appellee pay any amount toward her attorney fees and expenses, and she did not present any evidence whatsoever in regard to the attorney fees and expenses which she had incurred.

The order subsequently recommended by the family law master and adopted by the circuit court showed that the status of the record on the attorney fees question was thus at the time of the conclusion of the hearings. Specifically, the order stated:

During the hearings regarding said remaining issues, the plaintiff did not request that the defendant pay any amount toward her attorney fees and expenses nor did she present any evidence whatsoever in regard to the attorney fees and expenses she had incurred or the necessity or reasonableness thereof. There is accordingly no basis upon which such an award can or should be made, and each party should be responsible for the payment of their own attorney fees and expenses incurred herein.

The circuit court, in reviewing the case, also noted the status of the record. The court, in the final order in the case, stated:

With respect to the issue of attorneys fees, a review of the record herein indicates that the parties were in fact divorced on the 29th day of March, 1993 and that the issues of equitable distribution of marital assets and liabilities and attorneys fees were reserved for further proceedings as a result of the bifurcation agreed to by the plaintiff and defendant. It further appears that hearings were held herein on April 15, 1994, and June 23, 1994, on the remaining issues in the divorce action. It further appears from the record that the plaintiff did not seek nor was she denied the ability to introduce such evidence and as a result

**5.** The appellant testified that eighty to ninety thousand dollars had been placed in it, and the clear implication of her testimony was that the appellee had invested marital funds in it.

**6.** When asked about the Jean Dean property, the appellee testified:
Q Do you have any interest in Jean Dean's property in Alabama?
A None whatsoever.
Q Do you have any financial investment in that property?
A None whatsoever.
Q Any money that was utilized for that property, was that your money or Jean Dean's money?
A That was Jean Dean's money.

of the plaintiff not introducing evidence in connection with her request for the payment of attorneys fees by the defendant, she has waived her right to do so since such a request was not made prior to the conclusion of the hearings before the Family Law Master.

After reviewing the record in the case, this Court concludes that the family law master's findings and the circuit court's findings relating to the evidence on attorneys fees, or the lack thereof, were supported by the evidence and, under the circumstances, this Court cannot conclude that the circuit court erred in denying the appellant attorneys fees.[7]

For the reasons stated, the judgment of the Circuit Court of Harrison County is affirmed.

Affirmed.

---

**7.** The decision we render today is based on the record before us. It appears that on several issues the record may not have been well developed, as both the family law master and trial court below noted with respect to the issue of attorney's fees. The ultimate result in this case might well have been substantially different had issues such as fault, value and dissipation of assets, and award of attorney's fees been either raised or fully developed by both parties to this action.

As we said in *Berkeley Homes, Inc. v. Radosh,* 172 W.Va. 683, 310 S.E.2d 201 (1983), "the lawyers are responsible for trying law suits—it is the lawyers who must present a theory of the case[ ] [and] present the evidence necessary to prove that theory...." *Id.* at 686, 310 S.E.2d at 203.

We further pointed out in *Realcorp, Inc. v. Gillespie,* 193 W.Va. 99, 454 S.E.2d 393 (1994): "[I]t is neither the job of the trial court nor certainly this Court to clean up after lawyers ..." who fail to properly try their case. *Id.* at 104, 454 S.E.2d at 398. (involving complaint of trial court's failure to properly instruct jury where lawyers failed to submit proper instructions for court's consideration).