# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**Robin Lynn Fry,**
**Petitioner Below, Petitioner**

**FILED**
**February 2, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 22-ICA-47** (Fam. Ct. Lincoln Cnty. No. 20-D-120)

**Charles Andrew Fry,**
**Respondent Below, Respondent**


## MEMORANDUM DECISION

Petitioner Robin Lynn Fry appeals the Family Court of Lincoln County's July 26, 2022, Order which granted Respondent Charles Andrew Fry a one-half interest in the marital residence and gave him the option to buy out Robin's one-half interest. Charles filed a response in support of the family court's decision. Robin did not file a reply.[1]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Robin and Charles were married on March 25, 2004. On or about August 20, 2001, several years before their marriage, Robin had purchased a home in Logan County, West Virginia. On or about August 5, 2005, Robin transferred her ownership of the Logan County property to include both parties' names in order to sell it in compliance with West Virginia Code § 43-1-2 (1992).[2] On or about September 21, 2005, the parties purchased a

---

[1] Robin Lynn Fry is represented by Mark Hobbs, Esq. Charles Andrew Fry is represented by Jason D. Harwood, Esq.

[2] West Virginia Code § 43-1-2(b) states:

> [a]ny married person who conveys an interest in real estate shall notify his or her spouse prior to or within thirty days of the time of the conveyance if the conveyance involves an interest in real estate to which dower would have attached if the conveyance had been made prior to the date of enactment of this statute.

home in Lee County, North Carolina, with the intent that it would serve as their marital home. Although the North Carolina home was deeded solely in Robin's name, Robin used money from the sale of the Logan County, West Virginia home, and paid $68,000 toward the purchase of the North Carolina home, and Charles contributed the remaining $4,000.00 toward the purchase.

The parties resided together in the North Carolina home for twelve years, with Robin performing homemaking services and Charles earning income for both parties.[3] On or about August 20, 2016, Robin abandoned the marital home and moved back to West Virginia for over five years before initiating the divorce action below.

The family court ruled by order entered July 26, 2022, that the North Carolina home was marital property and should be placed on the open market for sale. Once sold, the parties would split the proceeds evenly. The family court also gave the parties a buyout option whereby Charles could pay Robin $28,600 or an amount to be agreed upon for Robin's interest in the property.[4] It is from that order that Robin brings this appeal. Our standard of review is as follows:

> "In reviewing . . . a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl. Pt., [in part,] *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

---

West Virginia Code § 43-1-2(c) states:

> [a] person making a conveyance described in the previous sections shall have the burden of proof to show compliance with this section. Such burden shall be met either by: (1) The signature of the spouse of the conveying party on the conveyance instrument or (2) [s]uch other forms of competent evidence as are admissible in a court of general jurisdiction in this state under the rules of evidence.

[3] Presumably, being the sole economic earner in the marriage, Charles paid the taxes, insurance, and utilities on the marital home. Also, it is evident from the record that Charles on multiple occasions used insurance proceeds to fix the damage on the home caused by storms.

[4] Apparently, the value of the home decreased from $72,000 to $57,200 at the time of the divorce.

*Amanda C. v. Christopher P.*, No. 22-IA-2, __ W. Va. __, __, __ S.E.2d __, __, 2022 WL 17098574, at *3 (W. Va. Ct. App. Nov. 18, 2022); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court order).

In her brief to this Court, Robin makes two arguments. First, she contends that the family court abused its discretion by awarding Charles one-half interest in the North Carolina home. Second, she asserts the family court made a clearly erroneous finding of fact when it found that the North Carolina home was marital property and that Charles had the option to buy out Robin's share for $28,600, or a price to be agreed upon by the parties.

As to the first issue of whether the family court abused its discretion by awarding Charles one-half interest in the home, it is necessary to examine both the definitions of marital and separate property as well as established precedent. West Virginia Code § 48-1-233 (2001) defines marital property as:

> (1) All property and earnings acquired by either spouse during a marriage, including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of the form of ownership, whether legal or beneficial, whether individually held, held in trust by a third party, or whether held by the parties to the marriage in some form of coownership such as joint tenancy or tenancy in common, joint tenancy with the right of survivorship, or any other form of shared ownership recognized in other jurisdictions without this state, except that marital property does not include separate property as defined in section 1-238; and

> (2) The amount of any increase in value in the separate property of either of the parties to a marriage, which increase results from: (A) An expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property, extinguishes liens, or otherwise increases the net value of separate property; or (B) work performed by either or both of the parties during the marriage.

By contrast, West Virginia Code § 48-1-237 (2001) defines separate property as:

> (1) Property acquired by a person before marriage;
> (2) Property acquired by a person during marriage in exchange for separate property which was acquired before the marriage;
> (3) Property acquired by a person during marriage, but excluded from treatment as marital property by a valid agreement of the parties entered into before or during the marriage;
> (4) Property acquired by a party during marriage by gift, bequest, devise, descent or distribution;

3

(5) Property acquired by a party during a marriage but after the separation of the parties and before ordering an annulment, divorce or separate maintenance; or

(6) Any increase in the value of separate property as defined in subdivision (1), (2), (3), (4) or (5) of this section which is due to inflation or to a change in market value resulting from conditions outside the control of the parties.

Additionally, "West Virginia Code § 48–2–l(e)(l) (1986) [W. Va. Code § 48–1–233 (2001) (Repl.Vol.2004) ], defining all property acquired during the marriage as marital property except for certain limited categories of property which are considered separate or nonmarital, expresses a marked preference for characterizing the property of the parties to a divorce action as marital property." *Karawan v. Karawan*, No. 13-0336, 2014 WL 1302445, at *2 (Mar. 31, 2014) (memorandum decision) (citing Syl. pt. 3, *Whiting v. Whiting,* 183 W. Va. 451, 396 S.E.2d 413 (1990); *see also* Syl. Pt. 2, *Staton v. Staton,* 218 W. Va. 201, 624 S.E.2d 548 (2005). Moreover, titling of the property, either sole or joint, alone is not determinative of the nature of the property. *See Burnside v. Burnside*, 194 W. Va. 263, 460 S.E.2d 264 (1995); *see also Koontz v. Koontz*, 183 W. Va. 477, 396 S.E.2d 439 (1990). Classification of the marital home as marital property or separate property is determined on a case-by-case basis according to the particular facts of the case, based on the intent and conduct of the parties.

Upon our review, we find no error. In the case *sub judice*, Robin transferred ownership of her separately owned property into both parties' names in order to sell it. The Supreme Court of Appeals of West Virginia has consistently held, "[w]here, during the course of the marriage, one spouse transfers title to his or her separate property into the joint names of both spouses, a presumption that the transferring spouse intended to make a gift of the property to the marital estate is consistent with the principles underlying our equitable distribution statute." Syl. Pt. 4, *Whiting v. Whiting*, 183 W. Va. 451, 396 S.E.2d 413 (1990). Nevertheless, although adding Charles' name to the deed is a factor for consideration, it is not determinative because it is clear from the record that Robin added Charles' name to the deed solely in order to comply with West Virginia Code § 43-1-2.

However, all the facts in this case point toward the North Carolina home being properly categorized as marital property. First, both parties contributed toward the purchase of the home by commingling their funds, albeit in different amounts, with Robin using the proceeds from the sale of her separate property and Charles using his own money. *See Storrs v. Storrs*, 195 W. Va. 21, 463 S.E.2d 853 (1995) (where the court held proceeds from the sale of the earlier marital home, which had been the wife's separate property, were converted to marital property when she used those proceeds to construct the second marital home). Additionally, West Virginia Code § 48-1-233(2)(A) defines marital property as "[a]n expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property."

4

Second, when purchased, the home was intended to be the marital home. Robin and Charles located and purchased the marital home together after marriage, intending for it to be the marital home. *See, e.g., Hinerman v. Hinerman*, 194 W. Va. 256, 460 S.E.2d 71 (1995). Third, the home was in fact used as their marital home for over twelve years and during that time, both parties made economic and non-monetary contributions to the care and maintenance of the home over the course of twelve years.[5] Fourth, after Robin left Charles and the home to relocate to West Virginia, Charles became solely responsible for its maintenance and upkeep, contributing both monetarily and non-monetarily to the home. Lastly, after leaving the home and relocating, Robin made no meaningful effort to preserve the marital home as her own separate property. *See, e.g., Gainer v. Gainer*, 219 W. Va. 654, 639 S.E.2d 746 (2006); *see also Gross v. Gross*, 196 W. Va. 193, 469 S.E.2d 636 (1996). For these reasons, we hold the family court did not abuse its discretion.

As to the issue of whether the family court erred in granting Charles the option to buy out Robin's interest in the North Carolina marital home, we again turn to *Whiting*, which states:

> Equitable distribution […] is a three-step process. The first step is to classify the parties' property as marital or non-marital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in [W. Va. Code § 48-7-103].

*Whiting* at 452*,* 396 S.E.2d at 414, syl. pt. 1. Only step one is relevant here. Because the home was properly classified as marital for the aforementioned reasons, the family court did not err in granting Charles the option to buy out Robin's one-half interest. West Virginia Code § 48-7-103 (2001) states, "[i]n the absence of a valid agreement, the court shall presume that all marital property is to be divided equally between the parties…." Thus, the family court correctly divided the property equally by ordering a buyout for one-half of the home's value (or a price agreed upon by the parties).

For the aforementioned reasons we find no error in the Family Court of Lincoln County's order. The family court properly classified the home as marital property and granted Charles the option to buy out Robin's one-half interest.

---

[5] This case is distinguishable from *Chafin v. Chafin*, 202 W. Va. 616, 505 S.E.2d 679 (1998) (per curiam), where the court held the circuit court did not abuse its discretion in awarding the wife $54,000 in contributions she paid during the construction of the parties' home. In *Chafin*, the parties erected a home on land the husband had previously owned, titled solely in his name, and the parties were only married and lived in the home for three years. *Id.*

5

Accordingly, we affirm.

Affirmed.

**ISSUED:** February 2, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr

**DISSENTING:**

Judge Charles O. Lorensen

LORENSEN, Judge, dissenting:

I would remand this case to the family court for further proceedings and a new final order that makes sufficient findings of fact regarding whether the North Carolina residence titled solely in Robin's name and acquired in substantial part in exchange for Robin's separate property is properly and entirely classified as marital property pursuant to West Virginia Code §§ 48-1-233 and 48-1-237. The July 26, 2022, order fails to contain findings of fact and conclusions of law sufficient to allow meaningful appellate review. Accordingly, I respectfully dissent.