JOSEPH TIMOTHY DOBBS

*v.*

WILLIAM O. WALLACE, *Acting Warden*
*West Virginia Penitentiary*

(No. 13394)

AND

MIKE E. PRESTON

*v.*

WARDEN, WEST VIRGINIA PENITENTIARY

(No. 13398)

Submitted October 2, 1973.    Decided January 15, 1974.
Concurring Opinion January 15, 1974.
Dissenting Opinion January 23, 1974.

*DiTrapano, Mitchell, Lawson & Field, W. C. Field* for relators.

*Chauncey H. Browning, Jr.,* Attorney General, *Richard E. Hardison,* Deputy Attorney General, *David P. Cleek,* Assistant Attorney General, for respondent.

CAPLAN, CHIEF JUSTICE:

Invoking the original jurisdiction of this Court, the petitioners, Mike E. Preston and Joseph Timothy Dobbs, in separate petitions, each seek a writ of habeas corpus contending that he is being illegally detained by the warden of the state penitentiary in violation of his constitutional rights. Since each petition presents

identical issues, both will be considered and disposed of in his opinion.

Writs were issued by this Court in each of these cases, returnable on October 2, 1973, and counsel was appointed to represent the petitioners. The Attorney General, appearing for the respondent, filed an answer and return. On the return date these cases were submitted for decision upon the aforesaid pleadings and upon the arguments and briefs of counsel.

## MIKE E. PRESTON

Petitioner, Mike E. Preston, was indicted in the Circuit Court of Fayette County on a charge of breaking and entering. Upon his guilty plea he was sentenced to a term of one to ten years in the state penitentiary. That sentence was suspended and the petitioner was placed on probation, which, upon violation of the terms thereof, was revoked, and he was sent to the forestry camp. Upon his escape therefrom and his recapture, his suspended sentence was reinstated and he was sent to the Huttonsville Correctional Center to serve said sentence. In March, 1971 the petitioner was released on parole. He was arrested for alleged violations of the conditions of his parole on August 14, 1971, and, after notice, was, on August 31, 1971, afforded a hearing.

The letter from the parole board informing the petitioner of the alleged violation and of the time and place of the hearing contained the following language: "Please note that under West Virginia Parole Laws you have a right to employ an attorney to represent your interests at this hearing." He was also informed that he could present witnesses, offer testimony and submit any statement he desired at the hearing.

The parole revocation hearing was held before one member of the three member parole board. Thereafter, that member filed with the parole board a transcript of the hearing and his report, including his recommendation that parole be revoked. Acting thereon the parole board

revoked the petitioner's parole and returned him to Huttonsville. After an escape therefrom and recapture he was transferred to the state penitentiary to serve the remainder of his sentence.

## JOSEPH TIMOTHY DOBBS

In an indictment returned by the grand jury of Mason County, the petitioner, Joseph Timothy Dobbs, was charged with the crime of breaking and entering and, upon conviction thereof, was sentenced to serve one to ten years in the state penitentiary. On February 24, 1969 he was released on parole but was apprehended pursuant to a Pennsylvania detainer where he was subsequently incarcerated on several charges, including burglary and larceny. In December, 1972 this petitioner was returned to West Virginia as a parole violator.

By letter dated December 15, 1972, the petitioner was notified that by reason of alleged violations of the conditions of his parole, a revocation hearing would be held on December 27, 1972. After being informed of the charges against him and told that he "may have witnesses, offer any testimony, give evidence or submit any statement" at the hearing, the letter said: "Please note that under West Virginia Parole Laws, you have a right to employ an attorney to represent your interests at this hearing."

The hearing was held before one member of the three member parole board, a transcript of which was made a part of the record of this proceeding. That member filed with the parole board a copy of the transcript and his report, including his recommendation that parole be revoked. Thereupon, the board revoked the petitioner's parole and returned him to the state penitentiary where he remains.

The two issues, common to each petition, are: (1) Does one have a constitutional right to be represented by counsel at a parole revocation hearing? (2) Does one have a constitutional right to a parole revocation hearing .

before the parole board as opposed to one member thereof?

That an indigent charged with the commission of a crime is entitled to the appointment of counsel has long been recognized in this country. As early as 1932, in *Powell v. Alabama,* 287 U.S. 45, 77 L. Ed. 158, 53 S. Ct. 55, 84 A.L.R. 527 (1932), the Supreme Court recognized that under certain circumstances the failure to furnish the assistance of counsel to indigent defendants charged with a crime in a state court constituted an infringement of the due process clause of the Fourteenth Amendment. From *Johnson v. Zerbst,* 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019 (1938), to *Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A.L.R.2d 733 (1963), the recognition by the courts of the right of an indigent to counsel whenever his liberty is in jeopardy has become increasingly apparent. This Court, following the mandate of *Gideon,* so afforded the assistance of counsel to indigent defendants in *State ex rel. May v. Boles,* 149 W.Va. 155, 139 S.E.2d 177 (1964) and in many cases decided subsequent thereto.

In the consolidated cases of *Mempa v. Rhay* and *Walkling v. Washington State Board of Prison Terms and Paroles,* 389 U.S. 128, 19 L. Ed. 2d 336, 88 S. Ct. 254 (1967), Mr. Justice Marshall, writing for a unanimous court, held that under the constitution a lawyer must be afforded the defendant at proceedings at which probation was revoked and a deferred sentence imposed. He said that this was essential whether the proceeding "be labeled a revocation of probation or a deferred sentencing." Pursuant to that decision this Court, in *State ex rel. Strickland v. Melton,* 152 W.Va. 500, 165 S.E.2d 90 (1968), granted a writ of habeas corpus and discharged the prisoner for the reason that he was not afforded the assistance of counsel at his probation revocation hearing. See *State ex rel. Phillips v. Wood,* 152 W.Va. 568, 165 S.E.2d 105 (1968) and *State ex rel. Render v. Wood,* 152 W.Va. 484, 165 S.E. 2d 102 (1968). Thus, the right of an

accused indigent to the assistance of counsel has been extended to revocation of probation hearings.

The consolidated cases now before this Court pose the question as to whether the aforesaid right to the assistance of counsel should be afforded in parole revocation hearings.

Recent decisions have discarded the concept that parole, being a privilege or matter of grace, rather than a right, may be revoked without regard to the parolee's constitutional rights. Although *Morrissey v. Brewer,* 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972), does not directly hold that counsel must be afforded at a revocation hearing, the gravity of such hearing was succinctly characterized as follows:

> "We see, therefore, that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others. It is hardly useful any longer to try to deal with this problem in terms of whether the parolee's liberty is a 'right' or a 'privilege.' By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal."

The above quoted words forcefully persuade us that a hearing designed to revoke one's parole is a critical proceeding at which his liberty unquestionably is in jeopardy.

It is asserted on behalf of the respondent that inasmuch as the parolee is under conviction and supervision he enjoys only a limited freedom during the period of his parole and that a parole revocation hearing is not, therefore, a critical stage of criminal proceedings where substantial rights of the parolee are effected. While revocation of parole may not in every instance rise to the solemnity of a trial initially determining innocence or guilt, we reject the respondent's assertion that a hearing

revoking parole is not a critical stage of a proceeding where substantial rights of the accused parolee may be affected.

The parolee's liberty may be limited. He may be enjoined by past transgressions from the pleasures of the full freedoms enjoyed by the unconvicted and he may not be permitted to engage in some of his former activities. However, as a parolee, he is free from incarceration behind bars; he is permitted to live with and enjoy his family; and he is afforded the opportunity to seek suitable employment with which to support his family. These freedoms, limited though they may be, are precious and, as reflected in *Morrissey,* the revocation thereof would constitute a grievous loss.

*Morrissey* enunciated certain minimum requirements of due process in revoking paroles. Included therein are the disclosure to the parolee of evidence against him; the opportunity to be heard in person and to present witnesses and documentary evidence; and the right to confront and cross-examine adverse witnesses. In the fulfillment of these requirements, clearly, counsel could be of great assistance to the parolee. As stated by Justice Douglas in his concurrence and dissent, in part, "Moreover, the parolee should be entitled to counsel. *** 'Counsel can see that the relevant facts are brought out, vague and insubstantial allegations discounted, and irrelevancies eliminated'."

In *Gagnon v. Scarpelli,* 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973), the Supreme Court declined to hold that a state was under a constitutional duty to provide counsel for indigents in all probation revocation cases, holding therein that such decisions must be made on a case-by-case basis in the exercise of sound discretion by the state authority charged with responsibility for administering the probation system.

Considering the instant cases in the light of *Gagnon* we are unable to say that the records disclose facts which,

under the requirement of due process of law, show a need for counsel at the revocation hearings. We, therefore, deny the relief on the basis of the lack of due process of law. We hasten to point out, however, that in the future this Court will have no hesitancy in granting such relief where the facts of the case reveal that the assistance of counsel was necessary to afford due process of law as contemplated by our state and federal constitutions.

In addition to their due process argument, the petitioners contend that they are entitled to the relief sought on the ground that they were denied their rights to equal protection of the law as guaranteed by the Fourteenth Amendment to the Constitution of the United States. In support thereof they quote the pertinent part of Code, 1931, 62-12-19, as amended, which reads:

> "When a parolee is under arrest for violation of the conditions of his parole, he shall be given a prompt and summary hearing, at which the parolee and his counsel shall be given an opportunity to attend."

The basis of their contention is that they are indigents and that, since the above statute affords parolees with sufficient funds the right to hire counsel to represent them at their parole revocation hearing, the constitution mandates the appointment of counsel for them.

Providing equal justice for poor and rich alike is most emphatically within the contemplation of the Fourteenth Amendment and, as demonstrated by many decisions, is one of the ultimate goals of our courts. In *Griffin v. Illinois,* 351 U.S. 12, 100 L. Ed. 891, 76 S. Ct. 585 (1956), it was held that, since the law allowed an appeal from a criminal conviction, which made necessary the acquisition of a copy of the transcript of the trial and, since such transcript could readily be acquired by one with sufficient funds, the refusal to provide a transcript to an indigent, solely because he could not pay for it, constituted a violation of the due process and equal protection clauses

of the Fourteenth Amendment. The court reasoned: "Such a denial [transcript to indigent] is a misfit in a country dedicated to affording equal justice to all * * * . There can be no equal justice where the kind of a trial a man gets depends on the amount of money he has. Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts."

The court, in *Cottle v. Wainwright,* 477 F.2d 269 (1973), cogently and forcefully held that under the equal protection clause a state was obligated to appoint counsel for an indigent parolee at his parole revocation hearing, where a state statute permits a parolee to hire counsel for that purpose if he desires. The court then said:

"While absolute equality between rich and poor is not required by the Constitution, we think that indigent parolees at least are entitled to as adequate a parole revocation hearing as those who have means, and in this respect representation by counsel is likely to be of substantial importance to the poor as well as the rich. The very fact that the Florida legislature has seen fit to permit representation by counsel, at least to non-indigents, we think attests to its efficacy."

Citing and relying on the decision in *Cottle,* the court, in *Lane v. Attorney General of the United States,* 477 F.2d 847 (1973), arrived at the same conclusion. The rationale thereof is succinctly expressed in the following language:

"Modern jurisprudence cannot tolerate the denial of even a nonconstitutional right to counsel solely because of indigency. Wealth as a classifier of rights is suspect in the embrace of the equal protection clause of the Constitution. The unconstitutionality of government-sanctioned inequality between indigents and non-indigents in the granting or withholding of human rights has been confronted and discussed in many contexts and with many aspects. In the right to counsel bailiwick, however, we can find no room for equivocation or ambivalence or apologetics. If representation by counsel is a matter of

> right, be it constitutional, statutory, or even administrative, it can neither rise nor fall by counting-house standards."

See, in support, *Earnest v. Willingham,* 406 F.2d 681 (1969).

We adhere to the principles related in the above cited and quoted authorities and hold that the failure to furnish the petitioners counsel at their parole revocation hearings constituted the denial of equal protection of law as contemplated by the Fourteenth Amendment. We are cognizant of the contention of the respondent that these petitioners waived their right to counsel but are of the opinion that their actions were insufficient to effect a valid waiver of a constitutional right. They were told that under the statute they could employ counsel. Inasmuch as they could not afford to employ counsel to represent them they proceeded through the hearing without such assistance. It is incumbent upon the state to inform an indigent parolee that counsel will be appointed to assist him at the revocation hearing if he is without sufficient funds to employ an attorney.

The petitioners further contend that at the parole revocation hearing they were entitled to be heard by the parole board, not by only one member thereof, as was done in these cases, and that such practice constitutes a denial of their rights to due process of law as guaranteed by the Fourteenth Amendment. They assert that the "opportunity to be heard in person" by "a 'neutral and detached' hearing body such as a traditional parole board", as set out in *Morrissey v. Brewer, supra,* contemplates a hearing before the parole board.

We are of the opinion that this contention is without merit. Admittedly, it may be more effective for the entire board to be present at a parole revocation hearing; however, this issue does not rise to the dignity of constitutional consideration. Code, 1931, 62-12-19, as amended, provides that parole can be revoked only by the parole board and revocation is accomplished only in

that manner. This is confirmed by an affidavit of the members of the parole board which is included in the record. These parolees were given notice and were afforded a full and complete hearing, save the counsel question.

The affidavit alluded to above reveals that it has been the policy of the board to allow one member to conduct parole revocation hearings; that a record is made of all hearings; that this record, along with any documentary evidence, is submitted to the entire board; and that the entire board considers the record and all evidence and exhibits in reaching a decision. These procedures are expressly set out in the rules and regulations of the board, have been approved by the Governor and are on file in the office of the Secretary of State pursuant to Code, 1931, Chapter 29A, Article 2, as amended.

The parole board has many duties in addition to the consideration of parole revocations. Through the method of trial and error over a long period of years, it has been determined that the use of a single board member to conduct parole revocation hearings permits the most economical and efficient administration of the state parole process. While this last consideration could never overcome constitutional objections, where the act complained of does not effect constitutional rights, as we have herein found, the cost, efficiency and workability of a parole system are highly material. We, therefore, deny the relief sought on the ground that the revocation hearing was not held before the parole board.

In summary, we hold that the failure of the Board of Probation and Parole to furnish counsel to assist the petitioners at their revocation hearings constituted a denial of the equal protection of the law as contemplated by the Fourteenth Amendment and that by reason thereof the revocations of parole by the Board of Probation and Parole are null and void and of no force or effect. Consequently, the petitioners will be discharged from confinement forthwith.

This decision discharges the petitioners only from the confinement resulting from the void parole revocation hearing and has no effect whatever on the remainder of the indeterminate terms to which they have been sentenced.

> *Writs awarded; prisoners*
> *discharged and restored*
> *to parole status.*

HADEN, JUSTICE, concurring:

I respectfully concur in the excellent opinion of Chief Justice Caplan. I also believe the petitioners' right to be amply protected by the West Virginia Constitution.

The State, by its statutory law, having provided for the right of a parolee in a revocation proceeding to employ counsel, cannot withhold that same right to an indigent parolee, who is a member of the same class and separated from others solely on the basis of impecunious circumstances. West Virginia Constitution, Article III, § 17. Accord, *Linger v. Jennings,* 143 W.Va. 57, 99 S.E.2d 740 (1957); West Virginia Constitution, Article III, § 1. Accord, *State v. Goodwill,* 33 W.Va. 179, 10 S.E. 285 (1889); *State v. Peel Splint Coal Company,* 36 W.Va. 802, 15 S.E. 1000 (1892).

BERRY, JUSTICE, dissenting:

I respectfully dissent from the majority opinion with regard to the holding that the petitioners' constitutional rights were violated because the petitioners were not advised that an attorney would be provided by the Parole Board to represent them at the parole violation hearings.

The Supreme Court of the United States recently decided that it is constitutionally necessary to provide counsel to an indigent in probation revocation proceedings when the facts are such that only an attorney could present them meaningfully. The status of an individual on probation and on parole is similar as far as deprivation of personal liberty and the degree of freedom involved.

This case, therefore, should come within the rule announced in *Gagnon v. Scarpelli, supra.*

The parolees in this case both had violated the condition of their parole. In fact, the violations were not denied. No complicated or peculiar facts were advanced as requiring a professional presentation by an attorney in order to protect their rights. It is clear that an attorney was not necessary under the *Gagnon* rule.

A parole hearing is before an administrative board and not a court and is not a trial of a crime. It, therefore, does not come within the provision of Article III, Section 14 of the West Virginia Constitution providing for the assistance of counsel because that section of the Constitution specifically pertains to "Trial of Crimes and Misdemeanors".

The applicable statute, Code 62-12-19, as amended, merely provides that: " * * * the parolee and his counsel shall be given an opportunity to attend [the hearing]." There is nothing in the statute that requires a parolee to have an attorney either employed by the parolee or provided by the Board at every parole violation hearing.

I am authorized to state that Justice Sprouse joins in this dissent.