474 S.E.2d 534

**STATE of West Virginia ex rel. Daniel W. EADS, Jr., Petitioner,**

v.

**William C. DUNCIL, Warden, Huttonsville Correctional Center, and the West Virginia Board of Probation and Parole, Respondents.**

No. 23279.

Supreme Court of Appeals of West Virginia.

Submitted March 26, 1996.

Decided June 14, 1996.

---

**7.** The trooper's testimony on cross-examination did not conflict with his testimony on direct; rather, it expanded upon it.

Matthew A. Victor, Charleston, for Petitioner.

Chad M. Cardinal, Assistant Attorney General, Charleston, for Respondents.

ALBRIGHT, Justice:

In this original habeas corpus proceeding, the relator, Daniel W. Eads, Jr., claims that the West Virginia Board of Probation and Parole, herein afterwards called the Parole Board, improperly revoked his parole. He argues that the record fails to demonstrate that the question of the revocation of his parole was considered by the Parole Board as a body, rather than by one member of it, and he claims that under the law only the Parole Board as a body, and not one member of it, has legal authority to revoke his parole. He also suggests that the Parole Board, or the member acting in its behalf, failed to make adequate findings of fact and conclusions of law and that the revocation was not supported by evidence adduced during the hearings in the case. Lastly, he claims that certain conditions placed on him in conjunction with his parole were arbitrary and capricious.

After reviewing the issues presented and the exhibits filed, this Court believes that the record fails to show that the Parole Board as a body considered the revocation, and, accordingly, the Court believes that this matter should be remanded to the Parole Board for consideration by it, as a body, of the revocation of the relator's parole if such consideration was not previously given to the question. In line with this, the Parole Board is directed to assert affirmatively on the record that the matter was considered by the Parole Board rather than a single member of it. Further, the Court believes that the Parole Board's findings were adequate and that the record, if it accurately reflects the evidence at the hearing, supports a revocation. Lastly, the Court believes that the record suggests that at least one condition of the relator's parole was arbitrary and capricious.

The documents in this case show that the relator, Daniel W. Eads, Jr., was convicted of breaking and entering and nighttime burglary in the Circuit Court of Kanawha County and was confined in the Huttonsville Correctional Institution.

On March 31, 1994, the relator was released on parole. In conjunction with his release, a number of conditions were imposed upon him. The conditions relevant to this proceeding were:

1. That the relator would complete an alcoholic treatment program approved by his parole officer;

2. That he would obtain suitable employment and remain gainfully employed;

3. That he would report to his parole officer as scheduled;

4. That he would submit to random chemical screening or drug testing;

5. That he would not leave the county of his supervision (Kanawha) without the written permission of his parole officer.

The relator was initially enrolled in a treatment program as required by the conditions of his release, but he dropped out because the focus of the program was on drug abuse rather than alcohol abuse. The relator's parole officer did not institute negative action because the relator dropped out, but rather arranged a second treatment program and ordered the relator to attend Alcoholics Anonymous meetings until the second program began. The parole officer also provided the relator with slips to be signed at the AA sessions as proof of his attendance.[1]

At the time of his release on parole, the relator did not have employment and thus, could not remain gainfully employed as required by the conditions of his parole. As a consequence, his parole officer issued a special instruction to supplement or supersede the requirement that he be gainfully employed. The special instruction required him to make at least ten "employment contacts", or contact ten prospective employers, per day.

---

1. The rules and regulations governing the relator's release on parole authorized the parole officer to impose special written requirements on the relator and provided: "You will abide by any special written requirements imposed upon you by your parole officer."

The documents filed suggest that the relator did not comply with the conditions of his parole, and on March 30, 1995, the Division of Corrections notified him that it had reasonable cause to believe that he was in violation of parole. The notice set a preliminary parole violation hearing for Friday, April 7, 1995. In the notice, the Division of Corrections specifically charged that the relator had violated his parole in five ways. First, it charged that he had failed to participate in and complete an alcohol treatment program. Second, it charged that the relator had failed to make ten employment contacts per day as was required by his supervising parole officer. Third, it charged that the relator had failed to report to his parole officer for scheduled meetings on October 24, 1994, October 31, 1994, November 7, 1994, November 14, 1994, November 28, 1994, December 5, 1994, December 12, 1994, December 19, 1994, and December 26, 1994. Fourth, the Division of Corrections charged that the relator had refused to submit to a requested chemical screen or drug test on January 3, 1995. Lastly, the Board of Corrections charged that the relator had left Kanawha County, his prescribed area of supervision, and traveled to the Bluefield–Princeton area on March 8, 1995, without the written permission of his parole officer.

A preliminary hearing was held on April 7, 1995, and at the conclusion of that hearing it was determined that it was appropriate to proceed further with the revocation proceedings. A final hearing was conducted before one member of the Parole Board on May 18, 1995. The relator and his attorney attended that hearing, as did the relator's parole officer. The parole officer testified that the relator had violated the terms of his parole as charged in the notice of revocation proceedings. The relator did not deny all the allegations, but suggested that certain of the conditions were arbitrary and took the position that there were facts which should have excused or acted in mitigation of his noncompliance with the terms and conditions of his parole.

The specific evidence relating to the charge that the relator had not completed the approved alcohol treatment program was composed of the testimony of the relator's parole officer, who stated that the relator attended a few sessions of his initial treatment program. She also testified that she had no "factual" knowledge as to whether the relator actually attended AA sessions as required by the special instruction issued after the termination of the initial program, but did indicate that he did not return attendance slips to her. The relator, when asked about his attendance, testified:

MR. VICTOR [ATTORNEY]: Danny, did you participate in AA meetings?

MR. EADS: Yeah.

MR. VICTOR: For how long?

MR. EADS: I haven't been going.

MR. VICTOR: I mean, how many times did you go to meetings?

MR. EADS: I can't say.

MR. VICTOR: I mean how many times do you think, 10, 15.

MR. EADS: I guess I went that many times, maybe more, I ain't for sure.

The relator also suggested that his failure to participate was due to domestic problems and indicated that he had attempted to enter a mental hygiene program, but that the program would not accept him.

On the relator's failure to make the ten required job contacts per day, the relator's parole officer testified that the relator was to make at least ten employment contacts per day, and "[s]ubject was supplied with the contact sheets and was aware he had to turn then [sic] in every Monday. He turned in one. And no more after that." The parole officer also testified: "He was warned several times to start turning those in." The relator countered that he made seventeen job contacts on one day and that he tried to get a job on "some other days". He indicated that all his efforts were futile.

Relating to the charge that the relator had missed scheduled appointments with his parole officer, the evidence showed that the relator had missed nine separate weekly appointments scheduled on Mondays between October 24 and December 26, 1994. He also failed to contact his parole officer telephonically, or otherwise, about rescheduling these appointments. The relator did not deny that

he missed the appointments, but took the position that he did not have a driver's license or vehicle and that he thus had transportation problems.

To support the charge that the relator refused to submit to random drug testing, the parole officer testified that on January 3, 1995, she told the relator that he was to submit to a random drug test, and "... I told him that if the results were dirty I would request a warrant." At that point, the relator left. The testimony then proceeded:

> MR. VICTOR [Relator's Attorney]: So, um, then you don't remember what he said when he ran out, did you?
>
> MS. BALDWIN [Parole Officer]: Uh, you're not going to test me, or something like that.

Lastly, relating to the charge that the relator left the county of supervision without the permission of his parole officer, the parole officer testified:

> ... Uh, on these first page Rules and Regulations, um, B) is you're not to, you're to have written permission from your parole officer before you leave your prescribed area of supervision to which you've been paroled and you'll notice that the word Kanawha is written there. Also, on page three of that document the subject acknowledges that his prescribed area of supervision consists of the following county: Kanawha. Uh, and he was not given permission to be out of the county at that time and you'll notice State's Exhibit # 4, that subject was incarcerated in the Bluefield County Jail, uh, or Bluefield City Jail that is, on 3–8–95 and we're charging him with being out of his area at that time.

State's Exhibit # 4 was a certified copy of a record of the Bluefield Police Department indicating that the relator was incarcerated in the Bluefield City Jail between March 8, 1995, and March 17, 1995.

On June 15, 1995, sometime after the final revocation hearing, an "Order of Revocation of Parole" was issued. That order bore the typed signature "WEST VIRGINIA PAROLE BOARD", but was actually signed only by the one member of the Parole Board who conducted the hearing. The order contained the following "findings of fact and conclusions of law":

WHEREAS, Daniel Wayne Eads, Jr. was granted a release from the West Virginia Huttonsville Correctional Center on March 21, 1994, and

WHEREAS, Daniel Wayne Eads, Jr. has been found guilty of violating the conditions of his release on parole and the rules and regulations made for his supervision in the following ways:

*Charge # 1:* You did violate Condition # 5, special condition # 1 of your Parole Agreement governing your release on parole in that you failed to participate in and complete an alcohol treatment program.

*Evidence relied on:* State's Exhibit # 1 (Order of Release on Parole dated March 28, 1994; Parole Agreement signed by Daniel Eads on March 31, 1994; and the Reporting Instructions) and the testimony of Parole Officer Baldwin.

*Charge # 2:* You did violated Rule k of the Rules and Regulations governing your release on parole in that you failed to obtain ten employment contacts per day as instructed on October 5, 1994 by your supervising parole officer.

*Evidence relied on:* State's Exhibit # 1 (Order of Release on Parole dated March 28, 1994; Parole Agreement signed by Daniel Eads on March 31, 1994 and the Reporting Instructions); State's Exhibit # 3 (a copy of Mr. Eads' Special Instructions dated 10–5–94); and the testimony of Parole Officer Baldwin.

*Charge # 3:* You did violate Rule k of the Rules and Regulations governing your release on parole in that you failed to report as instructed on October 24, 1994, October 31, 1994, November 7, 1994, November 14, 1994, November 28, 1994, December 5, 1994, December 12, 1994, December 19, 1994, December 26, 1994 as directed to on October 5, 1994 by your supervising parole officer.

*Evidence relied on:* State's Exhibit # 1 (Order of Release on Parole dated March 28, 1994; Parole Agreement signed by Daniel Eads on March 31, 1994 and the Reporting Instructions); State's Exhibit # 3 (a copy of Mr. Eads' Special Instruc-

tions dated 10–5–94); and the testimony of Parole Officer Baldwin.

*Charge # 4:* You did violated Condition # 5, special condition of your Parole Agreement governing your release on parole in that you refused to submit to a chemical screen on January 3, 1995.

*Evidence relied on:* State's Exhibit # 1 (Order of Release on Parole dated March 28, 1994; Parole Agreement signed by Daniel Eads on March 31, 1994; and the Reporting Instructions) and the testimony of Parole Officer Baldwin.

*Charge # 5:* You did violate Rule b of the Rules and Regulations governing your release on parole in that you did leave your prescribed area of supervision to wit: Kanawha County and did travel to the Bluefield/Princeton area, WV on or about March 8, 1995 without written permission from your supervising parole officer.

*Evidence relied on:* State's Exhibit # 1 (Order of Release on Parole dated March 28, 1994; Parole Agreement signed by Daniel Eads on March 31, 1994; and the Reporting Instructions); State's Exhibit # 4 (a certified copy of a jail commitment from the Bluefield Police Department); and the testimony of Parole Officer Baldwin.

THEREFORE, the West Virginia Parole Board pursuant to the provisions of Chapter 62, Article 12, Section 9, Code of West Virginia 1955, as amended, does hereby revoke the parole on which the said Daniel Wayne Eads, Jr. was heretofore granted release from his confinement and order that the warden do forthwith return the said Daniel Wayne Eads, Jr. to be therein reconfined until he is otherwise released according to law.

█  Before addressing the issues raised in this case, the Court notes that the adjudicatory provisions of the State Administrative Procedures Act, W.Va.Code § 29A–1–1, do not apply to proceedings before the West Virginia Board of Probation and Parole and that W.Va.Code § 29A–1–3(b) specifically provides:

Except as to requirements for filing in the state register, and with the Legislature or its rule-making review committee, pro-

vided in this chapter or other law, the provisions of this chapter do not apply in any respect whatever to the West Virginia board of probation and parole....

The Court also notes that it has previously recognized that the revocation of parole or probation is not a part of a criminal prosecution, and, as a consequence, the full panoply of rights due a criminal defendant in a criminal prosecution does not apply to a parolee in a parole or probation revocation proceeding. *Sigman v. Whyte,* 165 W.Va. 356, 268 S.E.2d 603 (1980). This does not mean, however, that a parolee or probationer is not entitled to any constitutional rights whatsoever, and the Court has clearly recognized that where parole is involved an individual is entitled to what it considers "due process fairness requirements." These requirements have been specifically set forth in syllabus point 4 of *Tasker v. Mohn,* 165 W.Va. 55, 267 S.E.2d 183 (1980), a parole determination rather than revocation case, as follows:

Due process requires that parole release interview processes include the following minimum standards:

(1) Each prospective parolee must be given timely and adequate notice of the date and hour of his parole release interview;

(2) An inmate is entitled to access to information in his record which will be used to determine whether he receives parole (absent overriding security considerations which must be recorded in his file);

(3) Each inmate may personally appear before the parole board and give oral and documentary evidence;

(4) A record, which is capable of being reduced to writing, must be made of each parole release interview to allow judicial review; and

(5) Inmates to whom parole has been denied are entitled to written statements of the reasons for denial.

In recognizing that the constitutional rights available to a parolee are restricted on the one hand, while specifically detailing what was available on the other hand, this Court has engaged in a weighing process

whereby it sought to insure that a defendant received constitutional due process fairness at the same time that it sought to foster, and not hinder, the hearing process before the Board of Probation and Parole.

■ The Court notes that in the present case the relator, in effect, claims that, even outside a due process fairness analysis, the law requires that the revocation of his parole be considered by the Parole Board as a body, and not a single member of it. He also claims that the record in his case fails to demonstrate that the question of the revocation of his parole was considered by the Parole Board as a body.

This Court believes that the relator is correct in asserting that the Parole Board as a body must consider the revocation of parole. West Virginia Code § 62–12–19, the section governing revocation of parole in West Virginia, provides, in relevant part:

If at any time during the period of parole, there shall be reasonable cause to believe that the parolee has violated any of the conditions of his release on parole, the probation and parole officer may arrest him with or without an order or warrant, or the board of probation and parole may issue its written order or warrant for his arrest, which written order or warrant shall be sufficient for his arrest by any officer charged with the duty of executing an ordinary criminal process. . . .

When a parolee is under arrest for violation of the conditions of his parole, he shall be given a prompt and summary hearing, at which the parolee and his counsel shall be given an opportunity to attend. If at the hearing, it shall appear to the satisfaction of the board that the parolee has violated any condition of his release on parole, or any rules and regulations for his supervision, the board may revoke his parole and may require to serve in prison the remainder or any portion of his maximum sentence for which, at the time of his release, he was subject to imprisonment. . . .

Further, in *Dobbs v. Wallace*, 157 W.Va. 405, 201 S.E.2d 914 (1974), this Court considered in depth the question of whether a parole revocation hearing conducted by a single member of the Parole Board rather than the entire Parole Board was appropriate, especially in view of the holding of the Supreme Court of the United States in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), in which the Supreme Court of the United States recognized that the termination of parole requires an orderly process and is within the protection of the Fourteenth Amendment of the United States Constitution. In *Dobbs v. Wallace, supra,* this Court identified the issue relevant to the present case in the following terms:

The petitioners further contend that at the parole revocation hearing they were entitled to be heard by the parole board, not by only one member thereof, as was done in these cases, and that such practice constitutes a denial of their rights to due process of law as guaranteed by the Fourteenth Amendment. They assert that the "opportunity to be heard in person" by "a 'neutral and detached' hearing body such as a traditional parole board", as set out in *Morrissey v. Brewer* . . . contemplates a hearing before the parole board.

157 W.Va. at 414, 201 S.E.2d at 919. In *Dobbs v. Wallace,* the Court rejected this position. The Court stated:

We are of the opinion that this contention is without merit. Admittedly, it may be more effective for the entire board to be present at a parole revocation hearing; however, this issue does not rise to the dignity of constitutional consideration. Code, 1931, 62–12–19, as amended, provides that parole can be revoked only by the parole board and revocation is accomplished only in that manner. This is confirmed by an affidavit of the members of the parole board which is included in the record. These parolees were given notice and were afforded a full and complete hearing, save the counsel question.

The affidavit alluded to above reveals that it has been the policy of the board to allow one member to conduct parole revocation hearings; that a record is made of all hearings; that this record, along with any documentary evidence, is submitted to the entire board; and that the entire board considers the record and all evidence and

exhibits in reaching a decision. These procedures are expressly set out in the rules and regulations of the board, have been approved by the Governor and are on file in the office of the Secretary of State pursuant to Code, 1931, Chapter 29A, Article 2, as amended.

The parole board has many duties in addition to the consideration of parole revocations. Through the method of trial and error over a long period of years, it has been determined that the use of a single board member to conduct parole revocation hearings permits the most economical and efficient administration of the state parole process. While this last consideration could never overcome constitutional objections, where the act complained of does not affect constitutional rights, as we have herein found, the cost, efficiency and workability of a parole system are highly material. We, therefore, deny the relief sought on the ground that the revocation hearing was not held before the parole board.

157 W.Va. at 414–15, 201 S.E.2d at 919–20.

Although the Court in *Dobbs v. Wallace* recognized that a revocation hearing need not be conducted before the full Parole Board, the Court did not indicate that a single member of the Parole Board, rather than the Parole Board as a body, should consider and rule upon the revocation of a parolee's parole. To the contrary, the Court in *Dobbs v. Wallace* specifically found that there was evidence in that case indicating that the full Parole Board had reviewed the transcripts of the hearings conducted before a single member of the Parole Board and that the full Parole Board had ruled upon the revocation of the parolees' parole.

It is specifically provided in W.Va.Code § 62–12–19 that a parole shall be revoked by "the Board". The statute provides, in relevant part:

If at the hearing, it shall appear to the satisfaction of *the board* that the parolee has violated any condition of his release on parole, or any rules and regulations for his supervision, *the board* may revoke his parole and may require him to serve in prison the remainder or any portion of his maximum sentence for which, at the time of his release, he was subject to imprisonment.... (Emphasis supplied.)

■ In this Court's view, this language is clear and unambiguous insofar as it indicates that "the board", meaning the Parole Board, is vested with authority to revoke a parole. Further, our law is clear that "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syllabus point 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). *See also,* syllabus point 3, *Vandergriff v. Workers' Compensation Commissioner,* 183 W.Va. 148, 394 S.E.2d 747 (1990), and syllabus point 2, *State ex rel. Underwood v. Silverstein,* 167 W.Va. 121, 278 S.E.2d 886 (1981).

Unlike the situation in the *Dobbs* case, this Court cannot find an affidavit or other documentation affirmatively showing that the full Parole Board in the present case considered the revocation of the relator's parole. The parole revocation order was signed only by the member of the Parole Board who conducted the hearing.

As previously indicated, this Court believes that only the Parole Board, acting as a body, may legally revoke a parole and that a single member may not independently take the action. Given the lack of clarity in the present case as to whether the Parole Board, as a body, did consider the revocation of the relator's parole, this Court believes that it is essential to remand the case to the Parole Board so that the Parole Board, as a body, may clearly consider the revocation of the parole and act in the case.[2]

---

**2.** The Court notes that the relator in his petition charges that a tape of the final revocation hearing was not transcribed until after entry of the parole revocation order and, in fact, was not transcribed until counsel for the relator requested a transcription for the present appeal. It is also alleged that the tape is unclear and yielded a transcript full of error.

Fundamental fairness, of course, demands that a decision be based on the evidence, and in a parole revocation proceeding it is incumbent upon the Board of Probation and Parole to base its decision on the evidence adduced. Where, as in this case, it is alleged that there is error in a transcript, the Parole Board must not base its

The Court holds that, in order to comply fully with the governing statute, the record in parole revocation cases must affirmatively show that the documents and evidence produced in the revocation proceeding have been submitted to all duly appointed and qualified members of the Parole Board for consideration prior to the final decision, that the number of members considering such documents and evidence constituted a quorum for the conduct of business by the Parole Board, and that a majority of the duly appointed and qualified members considering the documents and evidence must concur in any order revoking parole, either by signing the order or filing with the secretary of the Parole Board a written concurrence in such revocation, which may be then so certified by the chairman of the Parole Board, the secretary of the Parole Board, or a member of the Parole Board assigned to conduct the proceeding.

We specifically decline to make this decision retroactive as to any revocation made before the order before us.

As to orders made since that time until our order today is effective, no person incarcerated pursuant to such order shall be subject to release solely by reason of our order today. As to any such cases in which a majority of the Parole Board has both considered the record of the revocation proceeding and concurred with the decision, the member of the Parole Board so considering and concurring in such decision shall forthwith file with the secretary of the Parole Board a written concurrence, and the secretary of the Parole Board shall prepare and certify an order in the nature of a *nunc pro tunc* and furnish and deliver copies thereof to those entitled to copies of the original order. In cases in which a majority of the Parole Board has not considered the record and concurred in the decision heretofore rendered, the Parole Board shall either proceed to reconsider the record, if available, and issue a new order revoking parole or setting aside the order of revocation or convene a new hearing, the

record of which shall be considered and acted upon in the manner consistent with this opinion. A person shall be entitled to release only upon the entry of an order of the Parole Board setting aside its prior revocation order and upon the terms and conditions set forth in such order.

Another issue suggested by the relator in the present case is that the revocation order failed to include appropriate findings of fact and conclusions of law.

As previously indicated, in syllabus point 4 of *Tasker v. Mohn, supra,* this Court recognized that where a denial of parole is involved, an individual to whom it has been denied is entitled to a written statement of the Parole Board's reasons for its action. Additionally, in *Rowe v. Whyte,* 167 W.Va. 668, 280 S.E.2d 301 (1981), the Court indicated that the written statement had to be more than a statement characterized by a "mechanistic quality."

Although both *Tasker v. Mohn, supra,* and *Rowe v. Whyte, supra,* dealt with the initial denial of parole rather than the revocation of parole, the interest of a convicted person in either the initial grant of parole or the revocation of parole is the same interest. Because of this, the Court believes that a party whose parole is being revoked is entitled to a written statement of the reasons of the Parole Board for revoking parole of the same nature and quality as is required of the Parole Board in an initial denial of parole. In effect, in a denial of parole the written reasons for denying parole should be set out by the Parole Board in a clear and nonmechanistic manner.

The parole revocation order in the present case does set forth the various charges against the relator and does in a summary manner state what the evidence relating to each charge was. For instance, in addressing the charge that the relator had violated the condition that he participate in and com-

---

decision upon the transcript until there has been an examination of the transcript to determine its accuracy. In conjunction with this, counsel for the relator should be afforded full access to the tape and to the transcript and should be afforded

an opportunity to object to defects in the transcription. Only if the Parole Board determines that the transcript is accurate should it rule on the basis of it.

plete an alcohol treatment program, the Parole Board's findings state:

*Evidence relied on:* State's Exhibit #1 (Order of Release on Parole dated March 28, 1994; Parole Agreement signed by Daniel Eads on March 31, 1994; and the Reporting Instructions) and the testimony of Parole Officer Baldwin.

In *Gross v. Gross,* 196 W.Va. 193, 469 S.E.2d 636 (1996), this Court stated:

In 9A C. Wright and A. Miller, *Federal Practice and Procedure,* § 2579 (1995), findings of fact, and inferentially conclusions of law, are discussed, and it is stated that:

[F]indings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue.

From the discussion in *Federal Practice and Procedure,* it is apparent that the purpose of the law in imposing the obligation on a trier to make findings of fact and conclusions of law is to insure that the trier, in reaching a decision, goes through a mental process whereby he relates the evidence adduced to the principles of law governing the issue in dispute. Further, the making of findings and conclusions enables a reviewing court to examine the trier's mental process to determine if the ultimate judgment is rationally and legally related to evidence adduced.

In this Court's opinion, the critical stage of fact finding and making conclusions of law is the mental activity of relating facts developed by evidence to the relevant law; it is not the mechanical reduction of findings and conclusions to paper.

196 W.Va. at 196, 469 S.E.2d at 639.

■ In the present case, by referring to the documents referenced by the Parole Board in its findings, the Court can determine what the relator was specifically required to do, what he allegedly did not do, and the specific testimony in the record showing that he did not do what he was supposed to do. In effect, the Court can understand the mental processes by which

the decision to revoke was made and can see how the ultimate judgment was rationally and legally related to the evidence. Further, in the present case, most, if not all, the evidence relating to the charges against the relator was uncontroverted, and the relator's defense was principally that of showing that his noncompliance was justified under the circumstances. Where evidence is controverted, this Court believes that it is desirable that the Parole Board provide supplemental comments to provide the Court with insight into the Parole Board's weighing of the evidence and to permit the Court to give deference to the Parole Board's findings.

In the present case, the Court believes that the Parole Board's findings were adequate and that the relator's assertion relating to findings is without merit. The Court further believes that in the future, where the evidence is controverted relating to key facts necessary to support a revocation, and where the findings lack sufficient detail for the Court to gain insight into the Parole Board's weighing of the evidence and the Parole Board should specifically identify the key disputes in the evidence and suggest why it resolved the dispute in such a manner as to support or deny revocation.

Mindful that the proceeding here is expressly made exempt from the provisions of the Administrative Procedures Act, W.Va. Code § 29A–1–1, *et seq.,* for contested cases, we do not intend to impose on such hearing the more demanding standards we have previously requested for contested cases subject to that legislation. We do suggest that, where there are factual disputes on key issues in a parole revocation case, a statement explaining how and why the dispute was resolved by the Parole Board will facilitate review and, absent unreasonable, arbitrary, capricious, or other clearly wrong action, allow courts to give appropriate deference to the Parole Board's conclusions.

■ The Court notes that the relator is also claiming that inadequate evidence was adduced during the hearings in this case to support the charges against him.

In perusing the record, the Court finds that there was evidence which, if believed,

supported the charges against the relator. For instance, it was charged that the relator had failed to report to his parole officer as scheduled. The parole officer testified that the relator had failed to report on nine scheduled occasions during October 24 and December 26, 1994. Additionally, the relator was charged with failing to submit to random drug testing. The probation officer testified that on January 3, 1995, she requested that the relator submit to a random urine test. She further testified that the relator refused to participate in that test. Similarly, the Parole Board charged that the relator had left Kanawha County, the county of his supervision, without the permission of his parole officer. The parole officer testified that the relator had left Kanawha County and went to Bluefield, West Virginia, on March 8, 1995. A document was also introduced into evidence indicating that the relator had been arrested and was in the Bluefield City Jail on March 8, 1995.

Lastly, the relator claims that certain of the conditions placed on him in conjunction with his parole were arbitrary and capricious.

In *Brewer v. Boles,* 261 F.Supp. 920 (N.D.W.Va.1967), the Court recognized that in West Virginia the Parole Board must obey legislation and must act in a way which is not unreasonable, capricious, or arbitrary.

Although arbitrary, capricious, unreasonable conduct is difficult to define, the Court believes that at least one condition imposed upon the relator which was raised in the present revocation proceeding was unreasonable, capricious, and arbitrary. That condition was that the relator make ten job contacts per day. As the Court understands the condition, the relator was required by his parole officer to contact ten prospective employers per day, every day. The documents filed indicate that the relator did not have a drivers' license and that he did not have independent means of transportation. The relator argues that contacting prospective employers entails not only the contacting process, but to be meaningful it must involved the examination of newspaper advertisements, the preparation of resumes, the donning of appropriate attire, and transportation to prospective interviews. This Court believes that this argument is well taken and, as a practical matter, it would be difficult, if not completely impossible, even for someone with independent transportation to contact ten separate employers per day on a repeated and consistent basis. The placing of conditions upon a parolee which are physically or otherwise practically impossible to meet, in this Court's view, is conduct which is unreasonable, arbitrary, and capricious. In the present case the Court believes that the requirement that the relator make ten job contacts per day was arbitrary and capricious. *See, e.g., Arlington Hospital v. Schweiker,* 547 F.Supp. 670 (E.D.Va.1982), where it is recognized that action is arbitrary and capricious when it is unreasonable, without consideration, and in disregard of facts and circumstances of the case.

After examining the other conditions which the relator was charged with violating, this Court cannot conclude that they are *per se* unreasonable, arbitrary, or capricious. While evidence adduced and particular facts relating to a particular parolee's condition might, under certain circumstances, render them unreasonable, arbitrary, or capricious, in the present case this Court is unwilling to make such a finding.

For the reasons stated, the writ of habeas corpus heretofore issued is moulded to remand this case to the West Virginia Board of Probation and Parole for consideration by the West Virginia Board of Probation and Parole, as a body rather than by or through an individual member, of the revocation question herein, and the Parole Board, after so reconsidering the case, is directed to confirm as a body the findings and conclusions of law heretofore made or to make such other findings as it may deem adequate and appropriate.

Writ granted as moulded.