# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

FILED

**June 8, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

In Re: Bryan M. Atterson

No. 17-0506 (Raleigh County 15-AA-2-H)

## MEMORANDUM DECISION

Petitioner the West Virginia Law Enforcement Professional Standards Subcommittee ("the LEPS Subcommitee"), by counsel Celeste Webb-Barber, appeals the May 8, 2017, order of the Circuit Court of Raleigh County reversing Director W. Richard Staton's order affirming the LEPS Subcommittee's decertification of Respondent Bryan M. Atterson as a law enforcement officer. Respondent, by counsel Carl W. Roop, filed his response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Respondent Atterson was employed as a police officer with the City of Beckley Police Department ("the police department") from approximately 2009 through 2014. On September 10, 2013, he was arrested and charged with one count of domestic battery and one count of unlawful restraint. As a result of the arrest, he was placed on paid administrative leave by the police department. According to the circuit court, on March 28, 2014, respondent entered into an agreement with the State wherein he entered into a provisional plea of guilty to a new criminal charge of battery and the two original charges of domestic battery and unlawful restraint were dismissed.[1] Pursuant to the agreement, he was sentenced by the circuit court to sixty days of incarceration and one year of probation. However, the sentence and plea were suspended by the court in lieu of a one-year pretrial diversion agreement. The terms of that agreement required respondent not to incur any additional criminal charges between March 28, 2014, and March 28, 2015. If successful, the criminal charge would be dismissed. If he was arrested during that period, the provisional plea of guilty would be automatically entered and the sentence imposed. The agreement also required respondent to enter into a one-year period of psychological

---

[1] Without citing to the record, respondent asserts that on March 28, 2014, he entered into "an agreement 'NOT GUILTY PLEA OR ADMISSION OF GUILT' to resolve the outstanding allegations . . . The two criminal charges that were filed against [him] were dismissed and have since been expunged from his record. . . Respondent did not plead guilty or admit to any improper conduct."

1

treatment for behavioral problems.[2] At that time, respondent was placed back on active duty by the police department.

In April of 2014, the LEPS Subcommittee became aware of respondent's provisional plea of guilty. Following an initial review, the members directed staff of the LEPS Subcommittee to set a formal review of respondent's certification at their May 29, 2014, meeting. Respondent was notified of the meeting and was further invited to attend and present any statements and/or information to the LEPS Subcommittee regarding the circumstances of the provisional plea agreement and why his certification as a West Virginia law enforcement officer should remain active.

On May 29, 2014, respondent appeared with his counsel, Christopher Davis, and addressed the members of the LEPS Subcommittee. Several law enforcement witnesses from various departments and a special investigator for the Raleigh County Prosecutor's Office also appeared and addressed respondent's certification review. According to respondent, without any citation to the record, each of the members of law enforcement, the prosecuting attorney, and the investigator all appeared and requested that respondent be recertified. The members of the LEPS Subcommittee then voted to revoke respondent's certification and decertify him as a West Virginia law enforcement officer. On May 30, 2014, respondent was issued an "Order to Stop Working" by certified mail and advised of his right to appeal the LEPS Subcommittee's decision to the Chair of the Governor's Committee on Crime, Delinquency and Correction, within ten days of the notice. Respondent then obtained an Order to Set Aside his underlying provisional plea agreement from the Circuit Court of Raleigh County. That order remanded the matter back to the magistrate court for disposition. On that same date, Magistrate Massie entered an order removing any specific reference to the provisional plea of guilty, instead simply referencing a pretrial diversion.

On June 3, 2014, counsel for respondent filed a written request for reconsideration with the Subcommittee, which included additional documentation, including the revised court order. The LEPS Subcommittee then scheduled the request for reconsideration to be addressed at its June 26, 2014, meeting. During that meeting, respondent and his counsel made the LEPS Subcommittee aware of the new order and submitted additional documents related to the legality of pretrial diversions. The LEPS Subcommittee chose to stand by its prior ruling of decertification and directed LEPS staff to draft a formal position statement setting forth that decision.

During its next meeting on July 31, 2014, the LEPS Subcommittee approved/ratified its position statement revoking respondent's West Virginia law enforcement certification. Upon receipt of the same, respondent timely appealed that decision to W. Richard Staton, Director of the West Virginia Division of Justice and Community Services, who also serves as the Chair of the Governor's Committee on Crime, Delinquency, and Correction. Director Staton referred respondent's appeal to Administrative Law Judge David Adkins ("the ALJ") to develop a factual

---

[2] With no citation to the record, respondent states that he was evaluated by Dr. Jafary and in a single visit was informed that he did not need treatment.

record and provide a recommended decision to Director Staton.

The parties conducted discovery, during which a potential witness conflict arose, necessitating respondent's original counsel to withdraw as counsel. Ashley Lockwood was then retained by respondent. On November 5, 2014, the hearing on the appeal began, and testimony and evidence were taken before a court reporter and the ALJ for three days. In January of 2015, the ALJ issued his recommended decision, reversing the LEPS Subcommittee's decision to revoke certification.[3] However, Director Staton determined that there was substantial and sufficient evidence presented to the LEPS Subcommittee and the ALJ to support a rational conclusion that respondent's conduct was a violation, warranting revocation of his law enforcement certification. Thus, Director Staton rejected the ALJ's recommended decision and affirmed the LEPS Subcommittee's findings. Respondent appealed Director Staton's decision to the circuit court.

At the conclusion of that appeal, the circuit court entered its May 8, 2017, "Order Reversing and Setting Aside the Memorandum Opinion Issued by W. Richard Staton, Executive Director of the Governor's Committee on Crime and Delinquency and Correction dated the 3[rd] day of March, 2015, and Ordering the Recertification of Bryan M. Atterson as a Police Officer and Ordering That All Records Regarding the Decertification of Bryan M. Atterson be Expunged and or Sealed and that any Request for Information be Immediately Corrected Indicating that Bryan M. Atterson is and has Continually been a Certified Police Officer." In that order, the circuit court found that Director Staton's decision was in violation of the constitution. It also found that Director Staton's decision was clearly wrong in view of the reliable, probative, and substantial evidence contained in the record. It held that any reasonable view of the evidence leads the circuit court to conclude that all but one of the key findings were proven to be clearly wrong. It went on to find that Director Staton's decision was arbitrary and capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. The circuit court pointed to the detailed analysis of approximately thirty hours of testimony considered by the ALJ, stating that the ALJ's determination of the value of each witness's testimony was based upon more than just their words – including their demeanor, appearance, and the appearance of bias or hostility. The ALJ provided a detailed discussion of the testimony of Merrily McAuliffe, the girlfriend/companion of respondent who testified only before the ALJ and not the LEPS Subcommittee. Thereafter, the circuit court concluded that the decision of the LEPS Subcommittee was arbitrary and capricious because it was not supported by evidence; the decision of the Director was clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; and the decision of the Director was arbitrary and capricious and unsupported by the clear evidence in this case because the Director disregarded the credibility and weight determinations made by the ALJ. The circuit court then adopted the decision of the ALJ in its entirety and overruled and set aside the order decertifying respondent as a police officer. The order also expunged respondent's record as to this matter. Petitioner appeals from

---

[3] Again without citing to the lengthy record, respondent states that the recommended decision stated that in the event respondent did not successfully complete the pretrial diversion, the ALJ recommended that the decision of the LEPS Subcommittee to revoke his certification as a law enforcement officer be upheld.

that order.[4]

This Court has previously established the standards for our review of a circuit court's order deciding an administrative appeal as follows:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A–5–4(a) and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. Pt. 1, *Muscatell v. Cline,* 196 W. Va. 588, 474 S.E.2d 518 (1996). In addition,

> [i]n cases where the circuit court has [reversed] the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*.

Syl. Pt. 2, *id.* Guided by these principles, we proceed to review the merits of the appeal before us.

On appeal, petitioner asserts two assignments of error. Petitioner argues that the circuit court erred in its determination that Director Staton's order was arbitrary or capricious. In support of that assignment of error, petitioner asserts that both the LEPS Subcommittee and Director Staton acted within their statutory authority. It further contends that the ALJ's decision was egregious and contrary to the facts and evidence presented. Petitioner asserts that the record supports a finding that respondent engaged in a pattern of conduct involving domestic battery and violence. While petitioner discusses the testimony of several witnesses, all of the testimony appears to be from the hearing before the ALJ, rather than any testimony before the LEPS Subcommittee. Therefore, it is unclear the basis for petitioner's argument that the LEPS Subcommittee decision, adopted by the Director, was neither arbitrary nor capricious. Additionally, it is clear that Ms. McAuliffe testified only at the hearing before the ALJ, though petitioner points to her statements to medical personnel and to Corporal Redden to argue that she has "consistently testified" regarding the events of September of 2013. Again without citing to the record, petitioner asserts that the ALJ placed a great deal of emphasis on Ms. McAuliffe's psychiatric condition and alleged substance abuse.

In the instant case, the ALJ heard approximately thirty hours of testimony and personally observed the witnesses and evidence. As we previously set forth,

---

[4] We note that both parties' briefs fall woefully short of the requirements set forth in West Virginia Rules of Appellate Procedure 10(c)(4) and (7), which require appropriate and specific citations to the record on appeal.

[a]s a general rule, we uphold the factual findings of an ALJ if they are supported by substantial evidence. *See Frymier–Halloran v. Paige,* 193 W.Va. 687, 458 S.E.2d 780 (1995). Under these facts and circumstances, we find there was substantial evidence supporting the ALJ's findings. We cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence, despite our perception of other, more reasonable conclusions from the evidence. *Board of Education of the County of Mercer v. Wirt,* 192 W.Va. at 579, 453 S.E.2d at 413 ("[i]ndeed, if the lower tribunal's conclusion is plausible when reviewing the evidence in its entirety, the appellate court may not reverse even if it would have weighed the evidence differently if it had been the trier of fact"). Whether or not the ALJ came to the best conclusion, however, she was the right person to make the decision. An appellate court may not set aside the factfinder's resolution of a swearing match unless one of the witnesses testified to something physically impossible or inconsistent with contemporary documents. *See Anderson v. Bessemer City,* 470 U.S. 564, 574–75, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985). The ALJ, who apparently disbelieved the plaintiff's recollection of the circumstances leading up to the continuance, did not exceed permissible bounds in accepting testimony of the defendant's witnesses about this exchange. The ALJ is entitled to credit the testimony of those it finds more likely to be correct. *ABF Freight System, Inc. v. NLRB,* 510 U.S. 317, 114 S.Ct. 835, 127 L.Ed.2d 152 (1994); *NLRB v. Walton Manufacturing Co.,* 369 U.S. 404, 406–09, 82 S.Ct. 853, 854–56, 7 L.Ed.2d 829 (1962).

*Martin v. Randolph County Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995).

In its order, the circuit court specifically found that the Director's decision was "arbitrary and capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." The circuit court pointed to the ALJ's detailed analysis of the witness testimony set forth in his recommended decision, including the fact that the ALJ

discussed the demeanor of each witness to the extent that, as the trier-of-fact, he was or was not convinced by each witness and the extent to which each witness was or was not supported by other witnesses and why. Unlike a jury trial, in this case we have the detailed insight provided by the trier-of-fact regarding what weight was given to the testimony of each witness and why. . . It is clear that the [ALJ]'s determination of the value of each witness['s] testimony was based upon **more** than just their words. The demeanor, appearance, and the witness['s] appearance of bias or hostility was likewise identified and discussed in detail. . . The [ALJ] also discussed in detail the testimony of Merrily McAuliffe, the girlfriend/companion of [respondent] who testified only before the [ALJ] and not before the LEPS Subcommittee. A detailed review of all aspects of this case, including actions taken, statements made and conclusions reached, clearly show that the evidence provided by [respondent] and McAuliffe will ultimately decide the outcome of this case. . . The [ALJ], upon review of the combined testimony of

fourteen witnesses and further upon review of twenty-five items of documentary evidence presented at the hearing, found that based upon the totality of the facts that the LEPS Subcommittee did in fact act in an "arbitrary and capricious" manner when it revoked [respondent's] law enforcement certification.

(emphasis in the original). After addressing this Court's finding that an "action is arbitrary and capricious when it is unreasonable, without consideration, and in disregard of facts and circumstances of the case[,]" *State ex rel. Eads v. Duncil*, 196 W. Va. 604, 614, 474 S.E.2d 534, 544 (1996), the circuit court found that Director Staton took the ALJ's recommendation and the "cold transcripts" to make his own credibility determinations. The circuit court also noted that according to his final order, Director Staton was "not even provided with the proposed findings of the lawyers involved in the case." It also recognized that the ALJ detailed in his proposed order the "childish behavior" of many of the witnesses, but it found that "the past inappropriate behavior of certain witnesses alone is insufficient to support the outcome proposed by [Director] Staton in his final order." Because the ALJ was in the best position to determine the credibility of the witnesses in this fact-driven case, we find that the circuit court did not abuse its discretion in concluding that Director Staton's actions were arbitrary and capricious. Based on this finding, we need not address petitioner's remaining assignment of error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 8, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

**DISSENTING:**

Justice Menis E. Ketchum